[No. B085831. Second Dist., Div. Three. Mar. 30, 1995.]

HASKEL, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AETNA CASUALTY & SURETY COMPANY et al., Real Parties in
Interest.

**COUNSEL**

Reznik & Reznik, Janice Kamenir-Reznik, William M. Samoska and Barak S. Platt for Petitioners.

No appearance for Respondent.

Sinnott, Dito, Moura & Puebla, Randolph P. Sinnott, Debra R. Puebla, Gail L. Orr, Leboeuf, Lamb, Greene & Macrae, Dean Hansell and Aaron C. Gundzik for Real Parties in Interest.

**OPINION**

**CROSKEY, J.**—In this case, we deal with one of the important implications of the Supreme Court's most recent decision on a liability insurer's duty of defense.

In *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose I*), the court recognized that a liability insurer's duty to defend arises upon tender of the defense and that an immediate imposition of that burden is necessary to provide to an insured the full benefits due under the policy. This case raises the question of just how that rule impacts upon the right of an insurer, who has denied any defense obligation, to conduct discovery on disputed questions of coverage *prior* to a ruling on an insured's motion for summary adjudication of the defense issue. A corollary problem is whether, and under what circumstances, an insured can obtain a stay of such discovery pending resolution of the underlying third party action.

In this declaratory relief action, petitioners, Haskel Inc., Haskel Engineering & Supply Company and Haskel International, Inc., all California corporations (collectively Haskel), seek a writ of mandate directing the trial court:

(1) to vacate an order placing Haskel's motion for summary adjudication off calendar and to set that motion for immediate hearing, (2) to vacate an order requiring Haskel to fully respond to the discovery propounded by the insurers before the summary adjudication motion could be heard, and (3) to stay all discovery which is logically related to the disputed liability issues to be resolved in the underlying proceedings.

Real parties in interest are the several liability insurers of Haskel, and they oppose the issuance of the requested writ.[1]

We conclude that Haskel was entitled to have its summary adjudication motion considered and, if (1) a showing of a potential for coverage under the several policies is made, and (2) the insurers do not produce undisputed evidence which conclusively eliminates any possibility of coverage, the motion should be granted. We also conclude that Haskel is entitled to a stay of prejudicial discovery. We therefore grant the requested writ.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Haskel has, since 1964, manufactured hydromechanical equipment at a property located at 100 East Graham Place in the City of Burbank, California. During the period 1964 through 1985 Haskel was insured under several comprehensive general liability (CGL) policies issued by the insurers. These policies provided Haskel with defense and indemnity coverage for liability to third parties for bodily injury and property damage.

The terms and provisions of each of these policies is in some doubt due to the fact that Haskel has had difficulty in reconstructing all of the policies which may have been applicable during the 20-year period in question. However, for purposes of the limited issues presented to us, we assume that each of the policies contains substantially the same relevant provisions which are reflected in one of the policies (issued by the Hartford insurers) which is available:

(1)   The insurers promised to pay on behalf of Haskel all sums which Haskel "shall become legally obligated to pay as damages because of . . .

---

[1]These insurers are (1) the Aetna Casualty & Surety Company, a Connecticut corporation, (2) Standard Fire Insurance Company, a Delaware corporation, (3) C.E. Heath Compensation & Liability Insurance Company, a Delaware corporation, formerly known as Falcon Insurance Company, (4) Hartford Fire Insurance Company, a Connecticut corporation, (5) Hartford Accident and Indemnity Company, a Connecticut corporation, and (6) Hartford Casualty Insurance Company, a New Jersey corporation, (collectively, the insurers).

[2]The factual background upon which we rely is not a matter of dispute. It is fairly reflected in the limited trial court record which the parties have provided to us.

property damage." In addition, the insurers expressly undertook to "defend any suit against [Haskel] seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . .";

(2) Coverage for property damage is provided when such damage results from an occurrence. "Property Damage" is defined as physical injury to or destruction of tangible property *which occurs during the policy period*; "occurrence" is defined as an accident, including continuous or repeated exposure to conditions which result in property damage neither *expected nor intended* from the standpoint of the insured;

(3) Two exclusionary provisions are relevant:

(a) *Pollution Exclusion:* There is no coverage for property damage arising out of the discharge, dispersal, release or escape of toxic chemicals, liquids or gases, waste materials or irritants, contaminants or pollutants into or upon the land, the atmosphere or any course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is "sudden and accidental";

(b) *Owned Property Exclusion:* Property damage is excluded from coverage where the property is (i) owned or occupied by or rented to the insured, (ii) used by the insured, or (iii) in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

The Haskel property is located within the boundaries of an area commonly known as the Glendale-Burbank Operative Unit of the San Fernando Valley superfund site. From this record, we know only that Haskel has alleged it was named as a "potentially responsible party" by the Environmental Protection Agency (EPA) in August of 1992 and that it was accused of being a source of groundwater contamination to its own and adjacent property; in addition, Haskel was similarly accused of soil and groundwater contamination by the California Regional Water Quality Control Board (CRWQCB) in January 1993. The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) 42 U.S.C. §§ 9601-9675, authorizes federal and state government recovery from "responsible parties" of the costs of removing hazardous wastes and restoring affected property. Such "response costs" have been held to be incurred because of "property damage" and to constitute "damages" within the meaning of a CGL policy. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 828-837, 842-843 [274 Cal.Rptr. 820, 799 P.2d 1253].)

In the summer of 1993, the EPA ordered Haskel to prepare and agree to perform a phase I administrative order of consent on remedial design detailing a design for cleaning up the superfund site. In addition, the CRWQCB directed Haskel to remediate the alleged contamination of its property. These federal and state administrative directives were the only actions taken against Haskel (and are hereinafter referred to as the underlying action). No judicial proceeding has yet been filed.[3]

Haskel tendered defense of the underlying action to the several insurers. Each of the primary insurers denied coverage and refused to indemnify or defend Haskel, except the Hartford insurers who, with respect to one particular policy (Policy No. CBP500443), have agreed to defend under a reservation of rights. Because that policy (which apparently is the only Hartford policy which Haskel has so far been able to locate or reconstruct) covered only the period June 1, 1974, to June 1, 1977, Hartford has agreed to provide what amounts to a "pro rata" defense and has undertaken to pay 13 percent of the defense costs incurred by Haskel.

Claiming that it was entitled to a full defense of the underlying action from all of its primary insurers,[4] Haskel, on October 12, 1993, filed this action for declaratory relief to determine the coverage issues raised by the several insurers.[5] For purposes of this writ proceeding, we are concerned only with the issues relating to the primary insurers' duty to defend.

In February 1994, the insurers served Haskel with extensive discovery requests (including both interrogatories and demands for document production). Haskel responded with a motion to stay the indemnity issues or, in the

---

[3] The record before us reflects no consideration of the question of whether the threatened administrative action constitutes a "suit" within the meaning of Haskel's CGL coverage. Although the issue is not before us, we note, for the assistance of the trial court, that the issue was addressed in *Aetna Cas. and Sur. Co., Inc.* v. *Pintlar Corp.* (9th Cir. 1991) 948 F.2d 1507, where the court, faced with this very question, stated, "We hold that the EPA's administrative claims against the insureds triggered insurers' duty to defend. Coverage should not depend on whether the EPA may choose to proceed with its administrative remedies or go directly to litigation. A fundamental goal of CERCLA is to encourage and facilitate voluntary settlements. [Citation.] It is in the nation's best interests to have hazardous waste cleaned up effectively and efficiently. But the insured is not required to submit to, and may in fact wish to oppose the threat. In either event, the insurer's duty to defend may well be triggered." (*Id.* at p. 1517.)

[4] Some of the policies issued by some of the insurers are actually excess policies; as to those policies, there is no dispute that a duty to provide a defense for Haskel would not exist until there has been exhaustion of the primary policies (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 767 [15 Cal.Rptr.2d 815]) or the excess insurer is otherwise required to "drop down" and provide coverage. The resolution of this potential dispute between Haskel and its excess insurers is not before us.

[5] In addition to separate causes of action for declaratory relief as to the insurers' duty to defend and indemnify, Haskel also pled counts for breach of contract and breach of the implied covenant of good faith. On or about January 26, 1994, Haskel filed a first amended complaint which also alleged these claims.

alternative, for a protective order regarding discovery requests which Haskel claimed were prejudicial to its position in the underlying action.[6] On March 24, 1994, the trial court denied Haskel's request for a stay of the action as to indemnity issues, but indicated that it would consider a confidentiality order to limit the use and dispersal by the insurers of any information contained in Haskel's responses to the discovery requests.[7] Such an order was in fact ultimately signed by the court on June 22, 1994, after several status conferences in which the trial court attempted to address what it believed were Haskel's legitimate discovery concerns.

Haskel requested and obtained from the insurers several extensions on their discovery requests. On May 20, 1994, it provided its initial responses to the insurers' written interrogatory discovery and on May 26 it delivered over 6,500 pages of documents. Supplemental discovery answers were provided on May 31, August 16 and November 7, 1994, in response to the insurers' objections that Haskel's responses were inadequate; in addition, Haskel provided an additional 900 pages of documents on October 25, 1994. Although the insurers had filed a motion to compel further responses, it was taken off calendar after Haskel promised to provide such additional responses; nonetheless, it is the insurers' position that Haskel has still not satisfactorily complied with their discovery requests and Haskel's efforts to obtain relief in these writ proceedings are an essentially unfair and improper means of avoiding responsibility to make a complete discovery response.[8]

On June 17, 1994, Haskel filed a motion to summarily adjudicate the limited issue of whether the insurers owed a defense to the underlying action

---

[6]Without going into unnecessary detail, the insurers' discovery requests were apparently designed to develop information relative to (1) the existence and terms of possibly lost policies, (2) whether or not Haskel could establish an "occurrence" under any of the policies and (3) the applicability of either of the two exclusionary clauses relied upon by the insurers. These latter two areas involved, in particular, the development of information relevant to the question of whether any pollution for which Haskel might be responsible was in fact "expected" and/or "intended" by Haskel or that any pollution release, discharge or dispersal was neither "sudden" nor "accidental." Such discovery inquiries could possibly relate to issues which were also likely to be involved in the administrative proceedings conducted in the ongoing underlying action. By way of illustration, the insurers propounded discovery regarding the following subjects: (1) contamination that occurred at the property; (2) spills and leaks of hazardous substances that occurred at the property; (3) Haskel's use, storage, and disposal of hazardous substances; (4) identities of all of Haskel's past and present employees and their functions; (5) creation, use, and closure of any pits or holes located at the property into which hazardous substances were placed or continue to be placed; and (6) communications regarding responsibility for remediation of the actual or alleged contamination.

[7]Haskel did not seek writ relief from the trial court's denial of its stay request on March 24, 1994.

[8]We were informed by the parties at oral argument that the trial court has now issued an order compelling further discovery responses by Haskel and that such order is the subject of a separate writ petition.

which, at that time, had been pending for nearly a year. The motion was set for hearing on July 21, 1994. The insurers filed an ex parte request to have Haskel's motion taken off calendar, claiming that they could not file opposition to the motion until Haskel had fully responded to all of their discovery requests. On June 22, 1994, the trial court granted the insurers' request and ordered the summary adjudication motion taken off calendar and, further, the motion could not be refiled until such time as Haskel had "fully complied with all outstanding discovery propounded by [the insurers]." It is this order which is the subject of these writ proceedings.

Haskel filed its petition for writ relief on August 4, 1994. After it was denied by this court, Haskel sought review in the Supreme Court. On October 13, 1994, that court granted review and transferred the case back to this court with directions to vacate our denial order and issue instead an alternative writ of mandate. We issued that writ on October 26, 1994, and set the matter for hearing.

## ISSUES

The two principal issues raised by this case were not directly addressed or resolved by the Supreme Court in *Montrose I*, although that decision certainly points the way in which we are required to go. Those issues are:

1. Is an insured entitled to an early judicial determination of an insurer's defense obligation based on (a) the allegations asserted in the underlying action, (b) the terms of all applicable liability policies, and (c) those facts known or available to the insurer at the time the underlying claim was tendered?

2. To what extent, if at all, is an insurer entitled to delay a summary adjudication of the defense duty issue until discovery has been completed on disputed coverage questions?

This case also presents a third and related issue: To what extent can an insured, in a dispute over the existence of the defense obligation, obtain a stay of discovery into coverage issues which turn on facts to be litigated in the underlying action?

## DISCUSSION

1. *General Principles of a Liability Insurer's Duty to Defend*

The Supreme Court recently summarized the general principles applicable to the duty of a liability insurer to provide a defense. ■ "It is by now a

familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. [Citation.] As we said in *Gray* [v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168]], 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.] [¶] The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.] [¶] Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim. [Citations.] . . . Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. [Citation.]" (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792], italics in original.)

These principles were endorsed again in *Montrose I*, where the court added, " '[f]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, *but upon those facts known by the insurer at the inception of a third party lawsuit.* [Citation.] Hence, the duty "may exist even where coverage is in doubt and ultimately does not develop." [Citation.]' [Citation.] [¶] The defense duty is a continuing one, *arising on tender of defense and lasting until the underlying lawsuit is concluded* [citation], *or until it has been shown that there is no potential for coverage,* . . . *Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf.* [Citation.] [¶] The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score. [Citations.]" (*Montrose I*, *supra*, 6 Cal.4th at pp. 295-296, some italics added.)

The important issue to which the *Montrose I* court then turned was the split of authority among several Courts of Appeal as to whether facts known to the insurer could, in spite of the allegations of the complaint in the underlying action, be used to *defeat* an insurer's duty to defend as well as to

establish it. ■ The Supreme Court endorsed the view set out in *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296], that an insurer could rely on facts known to it, which were extraneous to the allegations in the complaint, to defeat its duty to provide a defense. However, it required that such facts be *undisputed* and that they *conclusively* demonstrate that there was no *potential* for coverage. The court stated (quoting from the opinion of the Court of Appeal's decision in *Montrose I*), " 'neither logic, common sense, nor fair play supports a rule allowing only the insured to rely on extrinsic facts to determine the potential for coverage. It would be pointless, for example, to require an insurer to defend an action where undisputed facts developed early in the investigation conclusively showed, despite a contrary allegation in the complaint, that the underlying acts occurred on a date when the policy was not in effect or at a location concededly not covered by the policy. [Citations.] Similarly, where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, we see no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend. [Citations.] We see the critical distinction as not whether extrinsic evidence may be considered, but whether such evidence presents undisputed facts which conclusively eliminate a potential for liability.' " (*Montrose I, supra,* 6 Cal.4th at pp. 298-299.)

■ Finally, the court described the critical issue in an action for declaratory relief which seeks to resolve the issue of the defense duty. "To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." (*Montrose, I, supra,* 6 Cal.4th at p. 300, italics in original.) Thus, where the facts adduced in the declaratory relief action do not permit the court to *eliminate the possibility* that the insured's conduct falls within coverage of the policy, the duty to defend is then established absent additional evidence. (*Id.,* at p. 301; *Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1085.)

2. *The Trial Court Is Required to Consider Haskel's Motion for Summary Adjudication*

■ When threatened with the administrative imposition of remediation liability by federal and state agencies, Haskel filed this declaratory relief

action after the insurers denied coverage.[9] Asserting the need for an immediate defense, Haskel filed a motion for summary adjudication of the defense issue which the trial court refused to consider until Haskel had "fully complied" with all of the insurers' discovery requests. This was wrong for at least two reasons.

First, this is not a case where the responding parties were seeking a continuance of a noticed motion under Code of Civil Procedure section 437c, subdivision (h).[10] Neither the court nor the insurers purported to act under the authority of that section. What the insurers did was ask the court to simply take Haskel's motion off calendar and refuse to hear it until the insurers' discovery was complete. Even under section 437c, subdivision (h), a continuance could not be granted except upon a showing by affidavit, filed in *opposition to the motion*, that "facts essential to justify opposition may exist but cannot, *for reasons stated*, then be presented . . . ." (Italics added.) No such showing was made; indeed, no opposition was filed, only an ex parte application which successfully sought to take Haskel's motion off calendar.[11]

Second, and of far greater importance, the discovery for which the insurers sought priority was necessarily irrelevant to Haskel's summary adjudication motion. As the court in *Montrose I* put it, the existence of an insurer's defense obligation "turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of [the underlying] lawsuit . . . . [¶] . . . [It arises] on tender of defense and [lasts] until the underlying lawsuit is concluded . . . , or until it has been shown that there is *no* potential for coverage . . . ." (*Montrose I, supra*, 6 Cal.4th at p. 295, citation omitted.) Applying that principle to this case, if there was any potential for coverage for the administrative damage claims sought against Haskel, a duty of defense arose. If the claims asserted in the underlying action raise a potential for coverage, the insurers have a duty to provide a defense to Haskel upon

---

[9]For purposes of the issues presented to us, we will treat Hartford's acceptance of a 13 percent share of the defense burden as the equivalent of a defense denial. Such a unilateral limitation of its responsibility is not justified. If it owes any defense burden it must be fully borne (*Horace Mann Ins. Co.* v. *Barbara B., supra*, 4 Cal.4th at p. 1084) with allocations of that burden among other responsible parties to be determined later.

[10]Code of Civil Procedure section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

[11]Because there was no compliance with the response requirement of Code of Civil Procedure section 437c, subdivision (h), we do not consider the court's order to be justified by the authority in section 437c, subdivision (h), to "make any other order as may be just."

tender of those claims unless and until they produce in court *undisputed* extrinsic evidence which *conclusively* establishes that there is no potential for coverage.

The insurers were either aware of such evidence at the time of the tender or they were not; they did not need discovery from Haskel to determine the existence of that evidence. The insurers, if they wanted to defeat Haskel's summary adjudication motion, should have set forth such conclusive evidence in a proper opposition to the motion. If, on the other hand, they did not have such conclusive evidence, then they could not successfully oppose Haskel's claim for an immediate judicial recognition of the fact that a defense obligation *then* existed. In other words, if the underlying claim " 'alleged facts which would have supported a recovery covered by the policy, it was the duty of the [insurer] to undertake the defense, *until it could confine the claim to a recovery that the policy did not cover.*' " (*Montrose I, supra*, 6 Cal.4th at p. 298, quoting from *Lee* v. *Aetna Casualty & Surety Co.* (2d Cir. 1949) 178 F.2d 750, 753, italics in original.)

■ The insurers contend that this case really only involves a discovery dispute.[12] They argue that they require a full opportunity to complete their discovery into coverage questions before they can file a proper opposition to Haskel's summary adjudication motion. This confuses the principles surrounding the creation of a defense obligation with those applicable to its termination. It also reflects a failure to appreciate the ephemeral nature of an interlocutory adjudication of the duty to defend in favor of the insured. As *Montrose I* has now made clear, ". . . the duty to defend begins when a potential for coverage arises, and the duty continues *until the insurer proves otherwise.*" (*Hartford Accident & Indemnity Co.* v. *Superior Court* (1994) 23 Cal.App.4th 1774, 1781 [29 Cal.Rptr.2d 32].) At the heart of the insurers' argument is the unstated proposition that they should be permitted to delay an adjudication of their defense obligation until they develop sufficient evidence to retroactively justify their refusal to provide that defense. However, such a proposition is directly contrary to the principles articulated in *Montrose I* and has been expressly rejected by at least one other court. "[A] declaratory judgment of no coverage, either by summary judgment or after trial, does not retroactively relieve the . . . insurer of the duty to defend. It only relieves the insurer of the obligation to continue to defend *after the declaration.*" (*Hartford Accident & Indemnity Co.* v. *Superior Court, supra*, 23 Cal.App.4th at p. 1781, italics added. See also, *Fireman's Fund Ins. Co.* v. *Chasson* (1962) 207 Cal.App.2d 801, 807 [24 Cal.Rptr. 726].) Such a rule does not unfairly burden an insurer who disputes coverage. While an insured

---

[12]Unfortunately, both the trial court and this court, in our initial consideration of the matter, accepted that argument.

may obtain an early summary adjudication of a defense obligation, the insurer is entitled to seek a contrary ruling at *any time* it acquires the requisite evidence to conclusively eliminate any potential for coverage.

Thus, the trial court erred by effectively conditioning Haskel's right to have its summary adjudication motion heard upon the satisfaction of all of the insurers' discovery demands. The court should have heard and ruled upon the motion. Upon remand, it will be required to do so. Assuming, as we must, that Haskel's moving papers demonstrate a potential for coverage,[13] it will then be necessary for the insurers to produce undisputed evidence conclusively establishing that there was no potential for coverage. If they do not, then the motion should be granted. However, such a result will not mean that the insurers may not thereafter continue to search for and develop evidence that will ultimately enable them to conclusively defeat Haskel's coverage claim. Indeed, they are entitled to pursue all appropriate discovery toward that end, subject to restrictions imposed to prevent prejudice to the insured. We now turn to the consideration of that issue.

### 3. *Haskel Is Entitled to a Stay of Discovery on Issues Which Prejudice Its Defense of the Underlying Action*

In *Montrose Chemical Corp.* v. *Superior Court* (1994) 25 Cal.App.4th 902 [31 Cal.Rptr.2d 38] (*Montrose II*), the court, relying upon the principles set out in *Montrose I*, stated: "(1) since the duty to defend is broader than the duty to indemnify and (2) since an insurer may owe a duty to defend in an action in which coverage is in doubt and ultimately does not develop, it follows that (3) the duty to defend is a continuing one which arises on the tender of defense and (4) lasts until (a) the underlying lawsuit is resolved or (b) the coverage issue can be determined *without prejudice to the insured.*" (*Id.*, at p. 909, italics added.)

In *Montrose I*, the Supreme Court summarized the general principles which are to be applied when a declaratory relief action is brought to

---

[13]The limited record before us does not fully disclose the basis for Haskel's claim of coverage. However, Haskel does have the burden of showing, before it will be entitled to indemnification under the policy, that the claim made in the underlying action comes within the insuring clauses of the relevant policies. (*Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435].) The insurers, on the other hand, bear the burden of proving that a covered claim falls within an exclusion (e.g., the pollution exclusion). (*Ibid.*) If, as may be the case, Haskel intends to rely on the "sudden and accidental" *exception* to the pollution exclusion as the basis for indemnity coverage in this case, the question of who bears the burden of proving the application of that exception will be significant. It is an issue which is not free from doubt, as our Supreme Court has yet to address the question. However, it is not one that we are called upon to decide. We are here concerned only with the issue of the insurers' duty of defense and the *potential* for coverage, so we simply note the problem in order to assist the trial court upon remand. The only direct relevant appellate authority we have been able to find is the Ninth Circuit opinion in *Aeroquip Corp.* v. *Aetna Cas. and Sur. Co., Inc.* (9th Cir. 1994) 26 F.3d 893, 895.

determine coverage issues while the underlying claim on which the coverage dispute centers is still pending. "To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. [Citations.] For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious. This is the classic situation in which the declaratory relief action should be stayed. By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." (*Montrose I*, *supra*, 6 Cal.4th at pp. 301-302.)

There are three concerns which the courts have about the trial of coverage issues which necessarily turn upon the facts to be litigated in the underlying action. *First*, the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; *second*, such a circumstance requires the insured to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions—this effectively undercuts one of the primary reasons for purchasing liability insurance;[14] and *third*, there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former. It is *only* where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist. (*Montrose II*, *supra*, 25 Cal.App.4th at p. 910.)[15]

Haskel urged this analysis upon the trial court in support of its earlier unsuccessful motion to stay the declaratory relief action as to all issues

---

[14]An insured obtains liability insurance in substantial part in order to be protected against the trauma and financial hardship of litigation. If the courts did not impose an immediate defense obligation upon a showing of a "potential for coverage," thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit. (*Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 942-943 [122 Cal.Rptr. 470].)

[15]As did the court in *Montrose II*, we take special note of Justice Kennard's restatement of this rule. "There are at least two exceptions to the general rule barring declaratory relief on the insurer's duty to defend. First, declaratory relief is available if the insurer can establish lack of coverage by means of facts that the insured does not dispute. Second, declaratory

except those related to the insurers' defense duty. Although this motion was denied by the court, we essentially have the same basic question before us in Haskel's request that we order a stay of all discovery in the declaratory relief action which is *logically related* to issues affecting Haskel's liability in the underlying action.[16]

Unfortunately, we cannot determine from the limited record before us whether and to what extent the insurers' pending discovery requests fit that description. Haskel asserts its concern that such a relationship does exist and the record suggests, but does not establish, that that is the case. If so, under the principles discussed above, such discovery should be stayed pending resolution of the liability claims asserted against Haskel in the underlying action unless the court finds that a confidentiality order will be sufficient to protect Haskel's interests. However, the trial court is in a much better position than we are to make this determination.

■ The trial court can obtain and review the evidentiary claims and supporting affidavits and exhibits in order to make its decision. In doing so it should determine: (1) what is the exact nature of the claims asserted in the underlying action, (2) what defenses to coverage are asserted by the insurers, and to what extent, if at all, are they logically related to the liability issues raised in the underlying action, (3) what factual questions have to be resolved in order to sustain or defeat such defenses, (4) what is the likely nature of the available evidence, (5) to what extent, if at all, will Haskel suffer prejudice by the enforced discovery of the evidence which tends to support or defeat its claim of coverage or the defenses raised by the insurers and (6) to what extent, if at all, will a confidentiality order *realistically* protect Haskel from prejudicial disclosure. The trial court should make specific findings with respect to each of these matters before resolving Haskel's request for a stay of further discovery.

### DISPOSITION

The alternative writ issued by us on November 1, 1994, is discharged. Let a peremptory writ of mandate issue directing the trial court to: (1) vacate its order of June 22, 1994; (2) issue a new order setting Haskel's summary adjudication motion for hearing within forty five (45) days from the date of

---

relief is available if the insurer's defense to coverage hinges on factual issues that are unrelated to the issues in the third party liability action. [Citation.] In each of these situations, the duty to defend can be determined without forcing the insured to litigate issues that may arise in the third party action. [¶] . . . [¶] Of course, the insurer may have more than one defense to coverage. In that event, the trial court will need to consider each defense separately to decide whether it can be determined without prejudice to the insured. . . ." (*Montrose I, supra*, 6 Cal.4th at pp. 305-306 (conc. opn. of Kennard, J.).)

[16]We view this request as extending to the discovery of all evidence the production of which might prejudice Haskel's interests in the underlying action.

such order; and (3) issue an order staying all discovery in the action pending a factual determination by the trial court as to whether any pending discovery by the insurers is so logically related to the issues in the underlying action that further pursuit of that discovery would prejudice Haskel's interests in that action; if it finds that to be the case, the trial court shall make the discovery stay permanent unless it finds that a properly drafted confidentiality order will be adequate to fully protect Haskel from any prejudice to its interests in the underlying action. The insurers shall, in any event, be entitled to proceed with any discovery which is not logically related to the issues in the underlying action and thus not prejudicial to Haskel's interests.

Klein, P. J., and Kitching, J., concurred.

On April 25, 1995, the opinion was modified to read as printed above. The petitions of real parties in interest for review by the Supreme Court were denied June 29, 1995.