W.C. RICHARDS COMPANY, INC., Plaintiff-Appellant, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—96—3859

- Opinion filed June 20, 1997.

Stanley C. Nardoni, John S. Vishneski III, and Paul Walker-Bright, all of Keck, Mahin & Cate, of Chicago, for appellant.

Terrence E. Kiwala and Ellen D. Holzman, both of Rooks, Pitts & Poust, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

In a declaratory judgment action, plaintiff W.C. Richards Company, Inc., the insured, appeals the trial court's order granting summary judgment to defendant Hartford Accident and Indemnity Company, the insurer, and finding that defendant did not owe plaintiff a duty to defend relating to certain environmental issues. The issue on appeal is whether, under California law, the defendant insurer had a duty to defend the plaintiff insured in a matter initiated by a state environmental regulatory agency, *i.e.*, the California Regional Water Quality Control Board (the Board).

We reverse and find that defendant had a duty to defend.

The facts are not in dispute. From 1960 to 1991, plaintiff owned and operated an industrial paint manufacturing facility in Anaheim, California (the Anaheim site). By letter dated August 14, 1990, the Board informed plaintiff that the Anaheim site was determined to be a possible source of pollutants found in nearby groundwater. The outcome of the instant appeal is determined by whether or not the Board letter triggered defendant's duty to defend.

The Board letter, entitled "REQUEST FOR TECHNICAL

REPORT," informed plaintiff that "a statewide sampling program to determine the extent and nature of volatile organic contamination in groundwater throughout the state" had been conducted pursuant to a legislative directive. Plaintiff's Anaheim site was under the jurisdiction of the Board for the Santa Ana region (Regional Board). The letter then stated as follows:

"Results obtained from the sampling of wells in this geographical area indicate that chlorinated volatile organic contaminants (VOCs) are present in the groundwater.

The Regional Board is conducting a follow up investigation to determine the source of these pollutants. Regional Board staff has been investigating current and past industrial users of chlorinated organic chemicals, such as solvents, in Anaheim. As a result, we have found that there has been historical use of chlorinated solvents at your facility and that poor handling and disposal practices, which could have resulted in discharges of wastes, have existed. From the information gathered during our investigation, your facility has been determined to be one of the possible sources of the pollutants found in the groundwater near this site.

Since your company is the current operator of the facility and owner of the site, your company is responsible for any wastes that may have been discharged there. Therefore, in accordance with Section 13267 of the California Water Code, we request that you submit a technical report. The technical report must be signed by a registered engineering geologist or engineer with a minimum of 5 years experience in hydrogeology."

The Board letter then outlined the information that should be included in the report. The letter further advised plaintiff "that if this investigation finds that contaminants are present that could adversely impact groundwater, additional investigations or remedial measures may be necessary."

Subsequently, plaintiff submitted the Board letter to defendant and requested that defendant provide a defense based on this letter. The relevant language of the insurance policy that applies to defendant's duty to defend states as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A—bodily injury or

Coverage B—property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and *duty to defend any suit* against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are

groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." (Emphasis added.)

Defendant did not defend plaintiff in the Board matter.

Subsequently, plaintiff filed a complaint and a first amended complaint for declaratory judgment and other relief, alleging that defendant breached its duty to defend. Plaintiff and defendant filed cross-motions for summary judgment. Following a hearing on these motions, the trial court issued a written opinion on October 1, 1996. The trial court granted summary judgment in favor of defendant and held as follows:

"This court therefore rules that the action taken by the [Board] *in this case* was not the equivalent of a 'suit.' The [Board's] actions did not implicate the same 'immediate and severe' consequences that the Ninth Circuit found to invoke an insured's right to a defense in *Pintlar* [*Aetna Casualty & Surety Co. v. Pintlar Corp.*, 948 F.2d 1507 (9th Cir. 1991)]. Because there was no 'suit,' there was no resulting duty to defend, and therefore summary judgment is granted in favor of the insurer, Hartford." (Emphasis in original.)

On appeal, plaintiff asserts that the trial court erred and argues that, under California law, the Board administrative action constituted a suit for purposes of the duty to defend. Defendant counters that the language of the Board letter was insufficient to trigger its duty to defend because the language was investigatory in nature and did not threaten or invoke severe and immediate consequences.

Our review of rulings on a motion for summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine*, 154 Ill. 2d at 102.

■ Initially we find, and the parties agree, that the substantive issues in this case are governed by California law. Where the insurance policy does not contain an express choice of law, as in the present case, the policy provisions are " 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.' " *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 526-27 (1995), quoting *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d

522, 528 (1975). The application of these factors in the present case establishes that California law governs because the site at issue is located in California, the insurance policy was delivered to plaintiff's Anaheim plant, and the policies were countersigned by defendant's agent in California. Moreover, the matter at issue (the Board claim) concerned a facility located in California and is based upon a California regulatory agency. Accordingly, we look to California law to determine whether or not the Board letter triggered defendant's duty to defend.

The parties correctly direct particular attention to the decisions of the ninth circuit in *Pintlar* and the California Court of Appeal in *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 39 Cal. Rptr. 2d 520 (1995).

In *Pintlar*, the ninth circuit addressed an insurer's duty to defend an insured that received a notification from the Environmental Protection Agency (EPA) deeming the insured to be a potentially responsible party (PRP) in connection with environmental contamination pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) 42 U.S.C.A. § 9601 *et seq.* (West 1991). *Pintlar*, 948 F.2d 1507. The ninth circuit held:

> "[T]he EPA's administrative claims against the insureds triggered insurers' duty to defend. Coverage should not depend on whether the EPA may choose to proceed with its administrative remedies or go directly to litigation. A fundamental goal of CERCLA is to encourage and facilitate voluntary settlements. [Citation.] It is in the nation's best interests to have hazardous waste cleaned up effectively and efficiently. But the insured is not required to submit to, and may in fact wish to oppose the threat. In either event, the insurer's duty to defend may well be triggered." *Pintlar*, 948 F.2d at 1517.

In *Haskel*, the California Court of Appeal cited *Pintlar* with approval. *Haskel*, 33 Cal. App. 4th at 971, 39 Cal. Rptr. 2d at 523. In *Haskel*, the plaintiff insured was named as a PRP by the EPA for groundwater contamination and similarly accused by the Board for soil and groundwater contamination. Both the EPA and the Board directed the plaintiff to take certain action. The *Haskel* court observed that "[t]hese federal and state administrative directives were the only actions taken against [plaintiff] (and are hereinafter referred to as the 'underlying action'). No judicial proceeding has yet been filed." *Haskel*, 33 Cal. App. 4th at 971, 39 Cal. Rptr. 2d at 523. In a footnote following this statement, the *Haskel* court provided the following guidance:

> "The record before us reflects no consideration of the question

of whether the threatened administrative action constitutes a 'suit' within the meaning of Haskel's CGL [comprehensive general liability] coverage. Although the issue is not before us, we note, for the assistance of the trial court, that the issue was addressed in [*Pintlar*], where the court [was] faced with this very question ***." *Haskel*, 33 Cal. App. 4th at 971 n.3, 39 Cal. Rptr. 2d at 523 n.3.

The *Haskel* court then directly quoted the holding of *Pintlar* as stated above.

Following the opinion in *Haskel* in 1995, California courts heeded the assistance provided in *Haskel* and found that Board letters triggered an insurer's duty to defend. See Wynn's International, Inc. v. Continental Insurance Co., No. C—94—3766—CAL—ENE (N.D. Cal.) (August 14, 1995) (order for partial summary judgment); GrayBill Terminals Co. v. Fireman's Fund Insurance Co., No. 677722 (Sup. Ct., San Diego County) (December 19, 1995) (order granting summary adjudication of duty to defend); Varian Associates, Inc. v. Aetna Casualty & Surety Co., No. 944196 (Sup. Ct., San Francisco City and County) (February 27, 1996) (order on motion for summary adjudication).

In Wynn's International, the plaintiff insured (a die casting plant) received both a PRP letter from the EPA and directives from the Board. After noting the decisions in *Pintlar* and *Haskel*, the United States District Court specifically held "that the EPA and Board notices were 'suits' under California law for purposes of triggering the insurer's duty to defend." Wynn's International, slip op. at 14.

In GrayBill Terminals, a California superior court ruled that the duty to defend was triggered by a "Site Assessment Order" issued by the Board. The court specifically held "[a]s a matter of law [the insurer] had a duty to defend [the insured] in the proceedings initiated by the California Regional Water Quality Control Board." GrayBill Terminals, slip op. at 3.

In Varian Associates, a California superior court ruled that the plaintiff insured had presented a *prima facie* case that the insurer had a duty to defend in four administrative actions concerning environmental contamination at four separate sites, *i.e.*, one site in Utah, one site in Massachusetts, and two sites in California. The court noted that the insured had incurred response costs pursuant to the California Water Code and that such costs are damages, relying on *Aerojet-General Corp. v. Superior Court*, 211 Cal. App. 3d 216, 237, 257 Cal. Rptr. 621, 634 (1989). Although the four administrative agencies that initiated the environmental claims are not named, the decision obviously signifies that the Board was involved for the two

California sites because it bears the responsibility for enforcing the California Water Code.

Prior to the California Court of Appeal's decision in *Haskel*, the United States District Court, Central District of California, interpreted *Pintlar* differently and found that the insurers had a duty to defend the insureds in administrative proceedings initiated by CERCLA PRP letters but not in administrative matters initiated by the Board. McDonnell Douglas Corp. v. Allstate Insurance Co., No. CV—93—6290—RSWL (EEx) (C.D. Cal.) (October 27, 1994) (*McDonnell Douglas*). The court in *McDonnell Douglas*, however, specifically noted that the California courts of appeal had not yet examined the issue of whether initiation of a Board administrative proceeding triggers an insured's right to a defense.

In light of the subsequent decision issued by the California Court of Appeal in *Haskel*, *McDonnell Douglas* would be considered wrongly decided. The task of speculating on how a certain court may rule when faced with a clean slate, as was the court in *McDonnell Douglas*, is difficult at best. Faced with a similar clean-slate conundrum and conflicting outcomes in different jurisdictions, the sixth circuit found that Michigan law would hold that a PRP letter did not trigger a duty to defend in *Ray Industries, Inc. v. Liberty Mutual Insurance Co.*, 974 F.2d 754 (6th Cir. 1992). After the Michigan Supreme Court addressed the issue, however, a different result obtained (*Michigan Millers Mutual Insurance Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864 (1994)), and the conclusion reached by the sixth circuit in *Ray Industries* was effectively nullified by the sixth circuit in *Anderson Development Co. v. Travelers Indemnity Co.*, 49 F.3d 1128, 1131 (6th Cir. 1995).

We, however, do not have a clean slate and believe that *McDonnell Douglas* misinterpreted the holding in *Pintlar*. Our own supreme court found that *Pintlar* "determined that the *receipt* of a PRP letter invokes an insurer's duty to defend." (Emphasis added.) *Lapham-Hickey Steel*, 166 Ill. 2d at 530. Our supreme court, however, held that a "suit" requires an action in a court of law. Were we applying Illinois law, we acknowledge that a different result would obtain under *Lapham-Hickey*.

Most notably, however, the same district court that issued *McDonnell Douglas* (Central District of California) subsequently interpreted *Pintlar* to hold that an administrative proceeding with a *state* or federal agency can trigger the duty to defend. Zero Corp. v. Employers Insurance of Wausau, No. CV 94—3164 (JGx) (C.D. Cal.) (December 16, 1994). In Zero Corp., the insured was notified by both the EPA and the Board regarding environmental contamination. In

addressing the duty to defend, the court interpreted and relied with approval on *Pintlar*:

"Finally, on the issue of whether a 'PRP' letter or some other administrative proceeding can trigger the duty to defend despite policy language specifying the need for a 'suit,' the Ninth Circuit [in *Pintlar*] has answered that litigation is *not* needed.

\* \* \*

As a preliminary matter, the Court agrees with the Ninth Circuit's holding in [*Pintlar*] that the PRP notice could and did trigger the duty to defend here. *Pintlar* is well-reasoned and, as a result, leaves little doubt that [the insured] found itself in an adversarial relationship with the state and federal agencies. Although other jurisdictions have declined to consider a PRP notice to be a 'suit' under comprehensive general liability policies, the Court believes that such an approach exalts form over substance." (Emphasis in original.) Zero Corp., slip op. at 11-13.

■ As stated in Zero Corp., we find no discernable difference between state and federal agencies regarding environmental concerns. Empowered by statute, a state, such as California, can impose severe sanctions and penalties similar to the power exercised by federal agencies. An "insured's defense coverage should not depend *solely* on the whim of the drafter of the claim, that is, on whether the claim contains the word 'encourage' instead of 'demand' or 'voluntary' instead of 'mandatory.' " *EDO Corp. v. Newark Insurance Co.*, 898 F. Supp. 952, 960 (D. Conn. 1995), citing *Pintlar*, 948 F.2d 1507, with approval.

The letter is not merely a request for information. The language employed imposes a significant allegation of liability when it suggests that "poor handling and disposal practices" could have resulted in discharge of wastes and that the facility is a possible "source of pollutants found in groundwater." The letter further states that since plaintiff is the owner of the site, it "is responsible for any wastes discharged there." Plaintiff is additionally advised that it may be required to provide "remedial measures."

The reality is that the Board letter in the instant case, like a PRP letter, constitutes a coercive effort to obtain plaintiff's response. An insured, like the instant plaintiff, is compelled to take action to avoid or lessen its liability whether the impetus derives from a state or federal agency and an insurer's duty to defend is the same.

We believe that *Haskel*, following the holding of *Pintlar*, and the subsequent California court decisions demonstrate that California law would find that the Board letter was sufficient to trigger

defendant's duty to defend. Accordingly, we reverse the trial court's order granting summary judgment to defendant.

Reversed and remanded.

THEIS and QUINN, JJ., concur.