[No. B109353. Second Dist., Div. Two. Oct. 17, 1997.]

LIBERTY MUTUAL INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JENSEN-KELLY CORPORATION et al., Real Parties in Interest.

COUNSEL

Ropers, Majeski, Kohn & Bentley, Richard K. Wilson and Kevin G. McCurdy for Petitioner.

No appearance for Respondent.

Zevnik, Horton, Guibord & McGovern, Paul Anton Zevnik, Steven E. Knott and Mark B. Hartzler for Real Parties in Interest.

OPINION

ZEBROWSKI, J.—This is a toxic contamination insurance coverage dispute. It involves numerous contaminated sites across the country, numerous policies issued at various times and places and spanning several decades, numerous underlying environmental contamination cases, and numerous insurers. The plaintiffs are Jensen-Kelly Corporation and others (the insureds). The insureds seek declaratory relief of insurance coverage, damages, etc. In 1995, the insureds obtained summary adjudication that insurer Liberty Mutual had a duty to defend as to three of the sites involved. Liberty Mutual then began paying for the insureds' defense as ordered. In 1996, Liberty Mutual itself moved for summary adjudication, contending that the undisputed facts supporting its own motion now showed that Liberty Mutual had no duty to defend or to indemnify as to the three sites in question.

Liberty Mutual's motion was eventually denied in January 1997. The issue raised on this writ petition is whether a motion by an insurer seeking to terminate an earlier-adjudicated duty to defend must comply with the limitations of Code of Civil Procedure section 1008 (section 1008) concerning motions for reconsideration. The trial court found that Liberty Mutual's motion was governed by section 1008, found that the motion did not comply, and on that basis denied the motion as a defective motion to reconsider without ruling on the merits. This opinion concludes that section 1008 has no application in the circumstances of this case and orders the trial court to rule on Liberty Mutual's motion on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The insureds' motion for summary adjudication on duty to defend was heard in September 1995. Liberty Mutual's opposition was based on the argument that the proper trigger of coverage was a manifestation trigger. After Liberty Mutual filed its opposition, but before the trial court ruled, the

Supreme Court determined that the proper trigger is the continuous injury trigger.[1] Liberty Mutual's manifestation trigger argument was therefore rejected, and the insureds' motion was granted. Liberty Mutual then began paying for the insureds' defense.

In addition to filing its own opposition to the insureds' motion, Liberty Mutual also joined in the joint opposition of several other insurers. In the opposition in which Liberty Mutual joined was this passage: "[The insureds'] motion argues California law. Although [the insureds'] motion should be denied even if California law applies, Insurers do not waive their choice of law arguments or concede that California law does apply. Other states' law may apply because, for instance, the policies were issued in several states and the polluted sites are located in several states."

In 1996, about eight months later, Liberty Mutual filed the motion which resulted in this writ proceeding. Liberty Mutual argued that the undisputed facts supporting its motion showed that New York law applies to the policies insuring the three sites in question, and that under New York law there is no possibility that Liberty Mutual would ever have a duty to indemnify the insureds as to these three sites. The insureds opposed on the grounds that Liberty Mutual's motion was actually a motion for reconsideration, and that—as a motion for reconsideration—it was untimely because it was filed more than ten days after service of notice of the order granting the insureds' earlier motion in 1995. (§ 1008, subd. (a).) The trial court agreed, ruling "[Liberty Mutual's] Motion for Summary Adjudication is denied. This motion is an untimely motion for reconsideration of the Court's September 19, 1995 order granting summary adjudication to the plaintiffs on the duty to defend with respect to [the three sites in question]. *Haskel, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 963, 977-978 [39 Cal.Rptr.2d 520] (*Haskel*) permits an insurer to file a motion for summary adjudication on the duty to defend based on newly discovered facts which eliminate the potential for coverage, not on the law of a different state."

This writ petition followed.

## II. THE PERTINENT LAW OF DUTY TO DEFEND

■ The operative complaint in this action alleges that numerous insurers, including Liberty Mutual, issued to the insureds numerous comprehensive general liability (CGL) policies containing the standard language insuring against claims for bodily injury or property damage, etc., caused by an

---

[1](*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 913 P.2d 878] (*Montrose II*).)

occurrence, and providing that "the company [the insurer] shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage." Both the insureds and Liberty Mutual cite to case law construing the standard CGL language and proceed on the premise that this standard language applies here. We therefore proceed, as the parties and the court below did, on the premise that the standard language applies.[2]

In *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose I*), the Supreme Court construed the standard CGL language to require, in effect, that an insured's motion for summary adjudication of duty to defend be granted unless the insurer is able to demonstrate a basis for a summary judgment of no duty to indemnify. In the words of *Montrose I*: "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but [which] are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." (*Montrose I*, *supra*, 6 Cal.4th at p. 300.) It is therefore the "substantive law" of insurance, as applied to interpretation of the standard CGL language, that controls the type of showing an insured or insurer must make on a duty to defend motion.

The trial court relied on *Haskel, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 963 [39 Cal.Rptr.2d 520] (*Haskel*) for the proposition that "newly discovered facts" are necessary to support an insurer's motion to terminate a defense duty once that duty has been imposed. *Haskel*, however, contains no such requirement. To the contrary, *Haskel* took pains to emphasize the "ephemeral nature of an interlocutory adjudication of the duty to defend in favor of the insured." (*Haskel*, *supra*, 33 Cal.App.4th at p. 977.) Such a ruling is "ephemeral" because an insurer may obtain summary adjudication of no duty to defend "at *any time*" it can conclusively eliminate the potential for coverage. (*Haskel*, *supra*, 33 Cal.App.4th at p. 978, italics in original.)

The issue in *Haskel* was whether an insured's motion for summary adjudication on duty to defend could properly be delayed until the insurer

---

[2] We note, however, that the duties imposed by an insurance policy are a matter of contract, not common law. While we apply here case law construing the standard language quoted above, the same analysis might not apply if a differently worded policy were presented.

had a full opportunity to investigate and prepare. (*Haskel, supra,* 33 Cal.App.4th at p. 973.) *Haskel* held that the insured's motion could not properly be so delayed, because—once the insured had demonstrated a potential for coverage—the issue was simply whether the showing presented by the insurer in opposition eliminated all possibility of such coverage. (*Id.* at pp. 977-978.) In the words of *Haskel,* "Assuming, as we must, that [the insured's] moving papers demonstrate a potential for coverage, it will then be necessary for the insurers to produce undisputed evidence conclusively establishing that there was no potential for coverage. If they do not, then the motion should be granted. However, such a result will not mean that the insurers may not thereafter continue to search for and develop evidence that will ultimately enable them to conclusively defeat [the insured's] coverage claim. [Fn. omitted.]" (*Haskel, supra,* 33 Cal.App.4th at p. 978.) Quoting *Montrose I, Haskel* stated ". . . if the underlying claim ' "alleged facts which would have supported a recovery covered by the policy, it was the duty of the [insurer] to undertake the defense, *until it could confine the claim to a recovery that the policy did not cover.*" ' (*Montrose I, supra,* 6 Cal.4th at p. 298, quoting from *Lee* v. *Aetna Casualty & Surety Co.* (2d Cir. 1949) 178 F.2d 750, 753, italics in original.)" (*Haskel, supra,* 33 Cal.App.4th at p. 977.) *Haskel* again referred to *Montrose I* when it noted ". . . the ephemeral nature of an interlocutory adjudication of the duty to defend in favor of the insured. As *Montrose I* has now made clear, '. . . the duty to defend begins when a potential for coverage arises, and the duty continues *until the insurer proves otherwise.*' [Citation.]" (*Haskel, supra,* 33 Cal.App.4th at p. 977, italics in original.) Thus the ruling obtained by the insured in this case—that Liberty Mutual has a duty to defend—is not necessarily a permanent determination. It can endure only so long as Liberty Mutual is unable to demonstrate that there is no possibility of an eventual duty to indemnify.

*Haskel* explained that this state of law "does not unfairly burden an insurer who disputes coverage," because even though an insured "may obtain an early summary adjudication of a defense obligation, the insurer is entitled to seek a contrary ruling at *any time* it acquires the requisite evidence to conclusively eliminate any potential for coverage." (*Haskel, supra,* 33 Cal.App.4th at pp. 977-978, italics in original.) In view of the complete discussion in *Haskel, Haskel* cannot be interpreted as imposing a requirement that an insurer, on a subsequent motion for summary judgment or adjudication on duty to defend, must establish that the facts on which the motion is based were newly discovered after the insured's earlier motion for summary adjudication on duty to defend. The facts of the instant case provide an example of why *Haskel* cannot be so read. The insured here alleges that the case involves "at least the policy periods between 1953 through 1985," "over 45,000,000 pages of documents," a time period spanning 1941 to 1985,

"numerous Environmental Actions against the insureds," a variety of "distinct operations" both inside and outside of California, approximately 80 sites, etc. The insured's 127-page "Revised Corrected Fourth Amended Complaint" pleads 81 "Claim[s] for Relief." In the many years since issuance of the policies, there have apparently been several mergers and acquisitions, and the present insureds are in some cases successors of the original insureds. Notwithstanding such complexities, *Haskel* established that the insureds were entitled to a prompt ruling on their motion for summary adjudication on duty to defend, regardless of the state of preparation of the insurer. Tempering the insureds' right to this prompt ruling is the countervailing proviso that any favorable ruling obtained by the insureds may be "ephemeral" because the insurer can later "at *any time*" demonstrate that no duty to defend exists because there is no possible duty to indemnify. An insurer's duty to defend continues only so long as the possibility of duty to indemnify remains alive. Once that possibility is extinguished by court order, the duty to defend ceases. Whenever the insurer can demonstrate no possibility of a duty to indemnify, the insurer is entitled to termination of its duty to defend under the "substantive law" of insurance as applied to standard CGL language. (See *Montrose I, supra,* 6 Cal.4th at p. 300; Cf. *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 [65 Cal.Rptr.2d 366, 939 P.2d 766] [duty to defend may be extinguished on showing "that no claim can in fact be covered"].)

Since the substantive law of insurance provides that a duty to defend endures only so long as a possibility of duty to indemnify remains alive, the trial court must evaluate duty to defend based upon the showing before the trial court at the time of a particular motion. A subsequent motion by an insurer might theoretically constitute an impermissible motion for reconsideration, but only if the factual scenario presented by the insurer in support of the motion were precisely the same as that presented on the earlier motion. Only then would the insurer be asking the court to reconsider an earlier ruling.[3] In the present instance, Liberty Mutual presented an argument about trigger of coverage on the earlier motion. On the present motion, Liberty Mutual does not ask for reconsideration of the court's ruling on trigger of coverage, but instead contends that New York law applies and that there can be no duty to indemnify under New York law. Hence no motion to reconsider is involved here.

The substantive law laid out by *Montrose I* and *Haskel* does create the possibility for successive motions by insurers. Any tendency to excess here

---

[3]Even in this circumstance, there is some doubt about whether section 1008 would bar consideration of the motion. If it were demonstrated to a court that an earlier ruling was erroneous, it is doubtful that the Legislature could nevertheless *require* continued litigation on the basis of the prior erroneous ruling. This issue is not presently before us and we comment on it only to avoid any appearance of implied ruling.

is counterbalanced by the insurer's incentive to terminate a defense obligation as soon as possible, rather than to make repetitive unsuccessful motions. Any abuse that might persist despite this incentive can be dealt with by the court's sanction and other powers.

## III. The Issue of "Waiver"

The insureds raise as an alternative basis for upholding the trial court's ruling the proposition that Liberty Mutual "waived" its right to assert its present choice of law argument by not raising it at the time of the insureds' earlier motion. A waiver is an intentional relinquishment of a known right. (See, e.g., *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31-33 [44 Cal.Rptr.2d 370, 900 P.2d 619]; see generally 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 178(b), pp. 860-861.) What Liberty Mutual did here is the precise antithesis of a waiver. The trial court wisely did not accept or rely upon the insureds' argument that Liberty Mutual "waived" its choice of law argument. As shown by the briefing in which Liberty Mutual joined, Liberty Mutual not only did not waive this argument but rather expressly reserved it by stating that the "Insurers do not waive their choice of law arguments or concede that California law does apply." Clearly, no waiver occurred here.

## IV. Disposition

Let a writ of mandate issue directing the superior court to vacate its order of January 13, 1997, denying petitioner Liberty Mutual's motion for summary adjudication of issues as to duty to defend, to issue a new and different order setting that motion for hearing, and to rule upon petitioner Liberty Mutual's motion on the merits. The temporary stay is vacated. Petitioner to recover the costs of this petition.

Boren, P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied November 5, 1997, and the petition of real parties in interest for review by the Supreme Court was denied January 14, 1998. Baxter, J., did not participate therein.