75 Cal.Rptr.2d 69 (1998)
63 Cal.App.4th 1535
STATE of California et al., Plaintiffs, Cross-defendants and Appellants,
v.
PACIFIC INDEMNITY COMPANY, Defendant, Cross-complainant and Appellant.
No. B086001.
Court of Appeal, Second District, Division Four.
May 21, 1998.
Rehearing Denied June 18, 1998.
Review Denied August 12, 1998.
*71 Cotkin & Collins and Roger W. Simpson, Los Angeles, for Plaintiffs, Cross-defendants and Appellants.
Haasis, Pope & Correll, Kenneth E. Goates, Janelle Fike Garchie, Susan J. Gill, San Diego, Crosby, Heafey, Roach & May, Peter W. Davis, San Francisco, James C. Martin and Benjamin G. Shatz, Los Angeles, for Defendant, Cross-complainant and Appellant.
EPSTEIN, Associate Justice.
The State of California purchased one year of coverage under a general comprehensive liability policy issued by Pacific Indemnity *72 Company (Pacific Indemnity). The State and nine of its agencies (collectively the State) were sued for losses that occurred over a period of 43 years, including the one year of Pacific Indemnity's coverage. The claims against the State concerned property damage caused by toxic contamination over the entire period. The State tendered the defense to Pacific Indemnity. Pacific Indemnity took the position that it was not required to defend the State. Pacific Indemnity now concedes that it erred in refusing to defend. It argues, however, that its duty to defend is proportional to its one year of coverage as part of the 43-year period, so that its liability for defense costs should not exceed approximately two percent of the total defense costs. Pacific Indemnity also argues that contract damages for breach of a duty to defend are limited to the amount of defense costs actually incurred by the State. The State was initially represented by the Attorney General. After that it was represented by a private law firm, Irell & Manella, on a contingency fee basis. Pacific Indemnity argues that the contingency fee contract with Irell & Manella is unreasonable because it forces Pacific Indemnity to pay twice Irell & Manella's normal hourly rates. The State argues that it is entitled to reimbursement of fees on a "market rate" basis, with that rate used as a lodestar, and multiplied by a factor based on the "private attorney general" theory. The trial court agreed with all of the State's positions except the last.
We reject Pacific Indemnity's apportionment theory because California law requires that the insurer provide an entire defense, unless no claim is potentially covered. Pacific Indemnity is not currently entitled to reimbursement or offset because, to date, it has provided no defense. We agree that contract damages are limited to those incurred by the non-breaching party, and remand this case to the trial court for determinations of actual damages, based on the costs incurred by the State, including Attorney General staff salaries, in defense of the underlying lawsuit. We also conclude that Pacific Indemnity is responsible for fees due to Irell & Manella at that firm's normal hourly rate. We reject the State's cross-appeal challenging the trial court's determination that damages for breach of contract cannot be enhanced by a multiplier. We conclude the trial court ruled correctly on that issue.

FACTUAL AND PROCEDURAL SUMMARY
On September 20, 1963 Pacific Indemnity Company[1] issued a comprehensive liability insurance policy to the State of California and all state agencies except the University of California and the State Compensation Insurance Fund. The policy was in effect from September 20, 1963 to September 20, 1964, when the State canceled coverage. The State paid a total of $990,000 for the one year of coverage.
Relevant policy provisions state:
"Coverage BProperty Damage Liability[:] [¶] To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of liability imposed by law, including Chapter 1681 of the State of California Statutes of 1963, or liability assumed by contract, insofar as the State may legally do so, for damages, including consequential damages, because of injury or destruction of property, including the loss of use thereof.[2]
"Defense, Supplementary Payments[:] [¶] As respects such insurance as is afforded by this policy, the company shall: [¶] (a) Defend in his name and behalf any suit against the insured claiming such damages, even if such suit is groundless, false, or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as it deems expedient;...
"..........................................
"DefinitionOccurrence[:] [¶] `Occurrence' means an accident or a continuous or repeated *73 exposure to conditions which result in injury to persons or damage to property during the policy period, or an act or related series of acts which inflict injury to persons during the policy period."
On June 28, 1990, more than 25 years after the State canceled coverage, it filed a federal action for natural resource damage beginning in 1947. It did so as a co-plaintiff with the United States. The suit was brought under the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601 et seq.; CERCLA). The defendants include Montrose Chemical Corporation, Atkemix Thirty-Seven, Inc; Stauffer Management Company; ICI American Holdings, Inc.; Chris-Craft Industries, Inc.; Westinghouse Electric Corporation; Potlach Corporation; Simpson Paper Company; and County Sanitation District No. 2 of Los Angeles. The first claim, joined by the State, alleges that a subset of the defendants released hazardous substances into the San Pedro Channel from 1947 to the present. The second claim, brought only by the United States, alleges that certain defendants released hazardous substances into the air, soil, groundwater, and surface water surrounding the Montrose site.
The defendants filed five counterclaims against the State alleging the State was responsible for the contamination and should be held liable for any damages that might be proven. The counterclaims sought injunctions ordering the State to clean up the sites. The State's potential liability for the combined counterclaims is estimated to exceed one billion dollars.
The State tendered defense of the counterclaims to Pacific Indemnity in January 1991. Pacific Indemnity refused the defense because: (1) the counterclaims did not describe an occurrence during the policy period; (2) prior to the inception of the policy the State had documented damage to fish and marine life caused by pollution and waste; (3) coverage was triggered on the date the toxic substances were identified as presenting a hazard or the date of removal, whichever is earlier, either and both dates preceded the inception of the policy; (4) the State may have breached its duty to cooperate with Pacific by filing the action; and (5) damages to natural resources owned by the State are excluded from coverage. Pacific Indemnity based its claim for damage caused by pollution on an article written by Parke H. Young, an employee of the California Fish and Game Department, in which he concluded that pollution had damaged marine life in the Los Angeles-Long Beach harbor. The State asked Pacific Indemnity to reconsider its refusal to defend the counterclaims.
The State sued for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. While that complaint was pending, the State made several attempts to hire outside counsel to defend the counterclaims. In October 1991, the State requested that Pacific Indemnity pay the law firm of Bronson, Bronson, and McKinnon at a rate of $160 per hour to prepare motions to dismiss the counterclaims. On July 26, 1991, Pacific Indemnity made a compromise offer by which it agreed to pay fees for the law firm of Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki to defend the counterclaims "with respect to legal issues," and to pay for contract lawyers supervised by the Attorney General's office to defend the counterclaims "with respect to factual issues." Pacific Indemnity also agreed to "pay for its proportional share of fees of any private law firm selected by the State...." (Emphasis added.) The State rejected these offers.
The State next moved for summary judgment of four issues: (1) Pacific Indemnity owed it a duty to defend against the counterclaims; (2) Pacific Indemnity was barred from asserting the rates to be paid for the defense were as provided in Civil Code section 2860;[3] (3) Pacific Indemnity was obligated *74 to pay all reasonable costs of defending the counterclaims; and (4) Pacific Indemnity should pay for all reasonable settlements or adverse judgments reached in the CERCLA action. Summary judgment was granted on the first and third issues, the court finding that Pacific Indemnity was obligated to defend the stated claims and that it was "obligated to promptly and fully pay for all reasonable sums incurred in their defense." Summary judgment was denied on the other two issues.
The State also sought a writ of mandate to direct the trial court to enter summary judgment on the ground that, by its refusal to defend, Pacific Indemnity had forfeited its right to control the defense under Civil Code section 2860. We issued an alternative writ, then dismissed the proceedings because the State failed to demonstrate the lack of an adequate remedy at law. Pacific Indemnity denied its duty to defend and stated that it would not defend the State under a reservation of rights.
In April 1994, the State filed its first amended and supplemental complaint seeking declaratory relief, a preliminary injunction, and a permanent injunction. Pacific Indemnity filed a cross-complaint for declaratory relief seeking an allocation of the costs of defense. Pacific Indemnity argued that the duty to defend should be apportioned in an equitable manner. The State demurred to Pacific Indemnity's cross-complaint on the basis that the court already had determined that Pacific indemnity must pay for all of the State's defense costs. The court sustained the demurrer without leave to amend.
In a court trial, the State argued that it should be awarded fees under the private attorney general theory. Under this theory, it argued, rates should be calculated at approximately $300 per hour, and a multiplier should be applied to the base rate. The State also argued that the prosecution of the complaint and defense of the counterclaims were inextricably intertwined. Documentation by the Attorney General's office shows that through January 1994, 10,323.5 attorney hours and 751 paralegal hours had been spent on the action. The lead deputy attorney general testified that the office was not adequately staffed to cover the litigation since less than two full-time attorneys worked on the case.
Pacific Indemnity argued that the Attorney General's office should be reimbursed at the rate it charges other state agencies, which then was between $80 and $98 an hour.[4] Pacific Indemnity pointed out that the documentation by the Attorney General's office contained no separation between time spent prosecuting the action and time spent defending the action. Nor was there any description to the specific work performed by the attorneys.
The court found that Pacific Indemnity materially breached its duty to defend, and therefore had forfeited its right to participate in or control the State's defense, whether based on Civil Code section 2860 or otherwise. The court ordered Pacific Indemnity to pay for legal services rendered by the Attorney General's office through November 30, 1994 in the amount of $3,800,537.50 plus interest of $735,478.81 through June 30, 1995, and $738.99 per day thereafter. Pacific Indemnity also was ordered to pay costs incurred by the State for the special master. The rates for the attorneys' hours were $320 per hour and $350 per hour. The court found that the legal complexity of the issues warranted an enhancement, but concluded a multiplier was not permissible. The court also ordered Pacific Indemnity to pay for all costs in connection with the defense and that Pacific Indemnity pay all future fees incurred in defending the action.
Pacific Indemnity sought to clarify the judgment with respect to the contingency fee arrangement entered into by the State and Irell & Manella. Under that agreement, Irell & Manella's legal fees are to be calculated at 200 percent its normal hourly rates. In return, Irell & Manella agreed not to charge the State for legal fees beyond those recovered *75 from Pacific Indemnity. Irell & Manella also agreed that if Pacific Indemnity unequivocally acknowledged its duty to defend, without reserving any right to reimbursement against the State or Irell & Manella, the fees would be charged at Irell & Manella's normal rate of $190 to $425 per hour. The State's reply asked the court to determine the reasonableness of the contingency fee agreement.
In August 1995, Pacific Indemnity agreed to pay Irell & Manella's regular hourly rates while reserving its rights subject to the outcome of this appeal. The State responded that it was unable to expose itself to the possibility of paying the defense costs; it was unwilling to wait until all appeals are exhausted, and would not accept an agreement by which Pacific Indemnity reserved its rights to reimbursement.
The court concluded that the contingency fee agreement between the State and Irell & Manella was reasonable under the circumstances of the case. It found the State had not been able to afford an adequate defense during the nearly five-year period when Pacific Indemnity refused to provide one, and that the contingency fee agreement assured the State of an adequate defense. It found that Irell & Manella undertook a significant risk since, if an appellate court found that apportionment is required, the firm would receive only a portion of its fees, and if the appellate court found the agreement to be unreasonable, Irell & Manella could be responsible for reimbursing Pacific Indemnity.
In this proceeding, Pacific Indemnity concedes that the recent decisions of the Supreme Court in Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 24 Cal. Rptr.2d 467, 861 P.2d 1153 and Montrose Chemical Corp. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878, foreclose its arguments that it did not have to defend. But it maintains that the scope of its obligation should reflect the one-year duration of its coverage within the span of progressive property damage raised in the counterclaims.
Pacific Indemnity also questions the trial court's measure of damages for breach of its duty to defend. Specifically, it argues that compensation for work done by the deputy attorney generals at a commercial "market rate" is improper, and that a contingency fee agreement providing for a 100 percent surcharge is unreasonable. The State, in its cross-appeal, maintains that the fees awarded for work done by the Attorney General's office should be enhanced.

DISCUSSION

I
Pacific Indemnity advances three reasons why past and future defense costs should be apportioned with the State: (1) the State decided to "self-insure" (i.e. purchase no insurance) for all but one year of the 43-year period in which property damage was alleged; (2) the State did not reasonably expect that one year of insurance would provide coverage of defense costs for a lawsuit spanning 43 years; and (3) Pacific Indemnity should not be required to pay costs incurred by the state for prosecuting the Montrose action.

A
Recently, our Supreme Court considered the scope of an insurer's duty to defend as well as the extent of its right to seek reimbursement when some, but not all, of the allegations made against an insured are potentially covered. ()Buss v. Superior Court (1997) 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 hereafter Buss; Aerojet-General Corp. v. Transport Indemnity Co., supra, 17 Cal.4th 38, 70 Cal.Rptr.2d 118, 948 P.2d 909 (hereafter Aerojet.) The question presented itself in two "mixed claim" circumstances. In Buss, a lawsuit alleged 27 causes of action, only one of which was potentially covered by the insurer. (16 Cal.4th at pp. 41-2, 65 Cal.Rptr.2d 366, 939 P.2d 766.) The insurer accepted the defense and provided a defense while reserving its right to be reimbursed. (Id. at p. 42, 65 Cal.Rptr.2d 366, 939 P.2d 766.) The court held the insurer had a duty to defend the entire action, but could seek reimbursement from the insured for defense costs that could be specifically allocated to the defense of claims that were not even potentially covered. (Id. at pp. 49-50, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Buss did not consider the situation of an insurer that was *76 on risk only part of an entire period. That question was settled in Aerojet, where the Supreme Court held that if any part of any claim is potentially covered, the insurer has a duty to defend the entire lawsuit, with a right to be reimbursed for that part of the litigation that is not even potentially covered. (17 Cal.4th at p. 71, 70 Cal.Rptr.2d 118, 948 P.2d 909.) The reasons stem from contract law and the policy that "to defend meaningfully, [the insurer] must defend immediately. [Citation.] To defend immediately, it must defend entirely." (Id. at pp. 59-60, 70 Cal. Rptr.2d 118, 948 P.2d 909, quoting Buss, supra, 16 Cal.4th at pp. 48-49, 65 Cal. Rptr.2d 366, 939 P.2d 766.)
"An insurance policy is a contract between an insurer and an insured [citations], the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss [citations]." (Buss, supra, 16 Cal.4th at p. 44, 65 Cal.Rptr.2d 366, 939 P.2d 766.) The insurer's promises require it both to indemnify and to defend its insured. (Ibid.) The duty to defend runs to claims "merely potentially covered," while the duty to indemnify is triggered by claims actually covered. (Id. at pp. 45-46, 65 Cal.Rptr.2d 366, 939 P.2d 766.) The duty to indemnify arises after liability is established and requires payment of money up to the policy limit either to third parties or, in equity, to the insured. (Aerojet, supra, 17 Cal.4th at p. 56, 70 Cal.Rptr.2d 118, 948 P.2d 909.) The duty to defend arises when tender is made. It obligates the insurer, unless no part of any claim is potentially covered, to fund a defense to minimize the insured's liability. (Id. at p. 58, 70 Cal. Rptr.2d 118, 948 P.2d 909.) The triggering harm for the duty to defend is limited to the policy period, but the extent of the duty to defend is not. (Id. at pp. 56-57, 70 Cal. Rptr.2d 118, 948 P.2d 909.) "In other words, if specified harm may possibly have been caused by an included occurrence and may possibly have resulted, at least in part, within the policy period, it perdures to all points of time at which some such harm may possibly have resulted thereafter." (Id. at p. 58, 70 Cal.Rptr.2d 118, 948 P.2d 909.)
In a "mixed" action, in which some of the claims are at least potentially covered or in which parts of a claim are potentially covered, and others are not, the insurer has a duty to defend the entire action. (Aerojet, supra, 17 Cal.4th at p. 60, 70 Cal.Rptr.2d 118, 948 P.2d 909.) The justification for this rule is prophylactic rather than contractual to provide a meaningful defense, the insurer must defend entirely. (Buss, supra, 16 Cal.4th at pp. 48-49, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Under the contract, the insurer cannot seek reimbursement for defense costs allocated to a part of a claim that is at least potentially covered. (Aerojet, supra, 17 Cal.4th at p. 69, 70 Cal.Rptr.2d 118, 948 P.2d 909.) By contrast, the insurer is entitled to reimbursement from its insured for defense costs allocated to a claim, or a part of a claim, that is not even potentially covered. (Ibid.) The reason is that the insured did not contract for or pay premiums for defense of claims not potentially covered. (Ibid.) A claim is not potentially covered if it does "not even possibly embrace any triggering harm of the specified sort within its policy periods or periods caused by an included occurrence." (Id. at p. 71, 70 Cal.Rptr.2d 118, 948 P.2d 909.)
The insurer bears the burden of proving by a preponderance of the evidence that the claim is not even potentially covered. (Aerojet, supra, 17 Cal.4th at p. 69, 70 Cal. Rptr.2d 118, 948 P.2d 909.) The insurer must demonstrate either that the acts or omissions that caused specified harm occurred only after its, coverage expired, or caused discrete bodily injury or property damage before its coverage began. (Id. at p. 71, 70 Cal.Rptr.2d 118, 948 P.2d 909.) The insurer must preserve its right to seek reimbursement by undertaking defense of its insured upon an express reservation of rights, a reservation the insurer may unilaterally impose. (Buss, supra, 16 Cal.4th at p. 61, fn. 27, 65 Cal.Rptr.2d 366, 939 P.2d 766.)
In Aerojet, the Supreme Court considered a hypothetical example remarkably close to the facts of this case. In the example, an insurer was assumed to have issued a policy for one year of coverage, and the insured was assumed to have caused progressively deteriorating *77 bodily injury or property damage of a kind covered in this policy over a 30-year period. (Aerojet, supra, 17 Cal.4th at p. 73, 70 Cal.Rptr.2d 118, 948 P.2d 909.) The insured was sued on a claim that asserted the damage it covered extended to the entire 30-year period. Under these circumstances, the insured had a contractual right to a defense by the insurer of the entire claim if all the years of the claim were at least potentially covered. The court explained: "[Y]ear one might possibly have embraced some triggering harm of the specified sort caused by an included occurrence, and year two through year thirty might possibly have embraced some such harm resulting therefrom. By contrast, its right would be prophylactic if some of the years of the claim were at least potentially covered and the others were not, on the ground that the first year might possibly have embraced some triggering harm of the specified sort caused by an included occurrence, but some of the succeeding 29 years might possibly have embraced some such harm resulting therefrom and the others did not even possibly do so." (Id. at p. 74, 70 Cal.Rptr.2d 118, 948 P.2d 909.) If the damage could have been caused only after the policy expired, the insurer could seek reimbursement from the insured. (Id. at p. 75, 70 Cal.Rptr.2d 118, 948 P.2d 909.)
The Aerojet court rejected an argument that the insured should contribute to defense costs, holding that equitable contribution applies only between insurers. (Aerojet, supra, 17 Cal.4th at p. 72, 70 Cal.Rptr.2d 118, 948 P.2d 909.) "In a strict sense, `self-insurance' is a `misnomer.' [Citations.]... `[S]elf-insurance ... is equivalent to no insurance....' [Citation.] As such, it is `repugnant to the [very] concept of insurance....' [Citation.] If insurance requires an undertaking by one to indemnify another, it cannot be satisfied by a self-contradictory undertaking by one to indemnify oneself." (Ibid., fn. 20, emphasis in original.)
The comprehensive general liability insurance policy in this case covered property damage, and Pacific Indemnity does not dispute that at least some of the claims were potentially covered. This triggered Pacific Indemnity's contractual duty to defend claims potentially covered. (Buss, supra, at 16 Cal.4th at p. 46, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Its prophylactic duty required it to defend the entire action, even if not all claims were potentially covered. (Id. at pp. 48-49, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Pacific Indemnity's argument that its duty to defend should be apportioned with its insured based on the one year of its coverage is contrary to California law.

B
Pacific Indemnity's argument that it is not responsible for costs incurred by the State as plaintiff merits additional attention. The trial court stated, "Said fees are based upon the hours reasonably incurred by Plaintiffs' counsel in connection with the defense of the Montrose counterclaims, times a reasonable market rate." It ordered Pacific Indemnity to compensate the State for all hours spent by the Attorney General's office on the case. Pacific Indemnity argues that the method used by the attorneys to record their time on the case precludes separation of costs incurred in prosecuting the action from those incurred in defending the action. The State agrees that separation is impossible, but argues the reason is that tasks involved in prosecuting are inextricably linked to those involved in defending the counterclaims. Because separating prosecution costs and defense costs in this action apparently is not possible, the burden of proof becomes critical. Each party argues it should be borne by the other.
Generally, the insured, as the party seeking relief, carries the burden of proving the amount of costs incurred in defense of an action. (Aerojet, supra, 17 Cal.4th at p. 64, 70 Cal.Rptr.2d 118, 948 P.2d 909.) "By contrast, in the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the ... expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary." (Ibid.)
*78 Here, the State has the burden of proving the existence of the amount of the expense, and Pacific Indemnity has the burden of showing that these costs are unreasonable. The State met its burden when it demonstrated the hours worked and provided testimony that the work was all related to the defense. Pacific Indemnity has provided no evidence to rebut that claim. Based on this record, we conclude Pacific Indemnity failed to demonstrate that specific costs were either unreasonable or unnecessary to the defense. (See Fireman's Fund Insurance Companies v. Ex-Cell-O Corp. (E.D.Mich. 1992) 790 F.Supp. 1339, 1345 [If insurer "accepted the tender of defense and retained or appointed counsel to represent the policyholders, we would not today be struggling with a determination over which attorneys' fees were reasonable and necessary defense costs[,]" and in such circumstances, insurer bears burden of showing costs were unreasonable. (Italics omitted.)].)

C
Following the decision in Buss, we invited supplemental briefing from the parties. In its supplemental brief, Pacific Indemnity contends there is no potential for coverage as to some of the allegations against the State, including the allegation that the State improperly promulgated a 1990 regulation. It maintains that for some claims no damage occurred within the year the State was insured and for others only a negligible amount occurred within that year. Pacific Indemnity recognizes that these contentions exceed those asserted in its cross-complaint. But it argues that the trial court's sustaining of the demurrer to its cross-complaint should be reversed if there is any basis on which a cause of action could be stated.
Generally, a party is entitled to amend its complaint or cross-complaint if there is a reasonable possibility that defects can be cured by amendment. (Schultz v. Harney (1994) 27 Cal.App.4th 1611, 1622-1623, 33 Cal.Rptr.2d 276 ) At this point in time, Pacific Indemnity is not entitled to compensation from its insured based on a theory that claims are not even potentially covered. Buss was premised on a "`defend now seek reimbursement later'" theory. (Dynamic Concepts, Inc. v. Truck Ins. Exchange (1998) 61 Cal.App.4th 999, 1006, 71 Cal.Rptr.2d 882.) By repudiating its duty to defend and providing no defense, Pacific Indemnity has nothing from which to seek reimbursement. Buss does not support Pacific Indemnity's theory that the State should contribute to attorney's fees. To the contrary, it unequivocally holds that the insurer's duty is to defend the action in its entirety. (Buss, supra, 16 Cal.4th at p. 48, 65 Cal.Rptr.2d 366, 939 P.2d 766.)
Nevertheless, the State's position that Pacific Indemnity is foreclosed from ever seeking reimbursement for costs of defense goes too far. The State cites Kennedy v. American Fidel. & Cas. Co. (1950) 97 Cal.App.2d 315, 217 P.2d 457, which holds that an insurer that breaches a contract cannot rely on a contractual provision to seek reimbursement. (Id. at p. 317, 217 P.2d 457.) In this case, Pacific Indemnity seeks to avoid having to pay for fees which exceed its contractual burden, not to rely on a contract which it breached. "Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs.... The `enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed `unjust'" (Buss, supra, 16 Cal.4th at pp. 50-51, 65 Cal. Rptr.2d 366, 939 P.2d 766.) If Pacific Indemnity, after providing an entire defense, can prove that a claim was "not even potentially covered because it did not even possibly embrace any triggering harm of the specified sort within its policy period or periods caused by an included occurrence," it should have that opportunity. (Aerojet, supra, 17 Cal.4th at p. 71, 70 Cal.Rptr.2d 118, 948 P.2d 909.) This task "`if ever feasible,' may be `extremely difficult.'" (Buss, supra, 16 Cal.4th at pp. 57-58, 65 Cal.Rptr.2d 366, 939 P.2d 766, quoting Hogan v. Midland National *79 Ins. Co. (1970) 3 Cal.3d 553, 564, 91 Cal. Rptr. 153, 476 P.2d 825.)

II
Both parties maintain the trial court erred in calculating the attorney's fees Pacific Indemnity is obligated to pay. Pacific Indemnity challenges the trial court's finding that it is required to pay the market rate value of services performed by the Attorney General's office, and questions the reasonableness of the contingency agreement between the State and Irell & Manella. It reminds us that punitive damages are foreign to contract remedies. The State, in its cross-appeal, argues that the fees awarded for work done by the Attorney General's office should have been enhanced with a multiplier. We first consider appropriate fees for services rendered by the Attorney General's office, then address whether the contingency fee agreement is reasonable.

A
Pacific Indemnity argues the State should be reimbursed at the rate the Attorney General's office charges state agencies, not at a hypothetical market rate. The State argues that the Attorney General does not represent private litigants and that charging Pacific Indemnity the rate it charges to state agencies would create an incentive for insurers to breach contracts. The State also contends that the amount an insured incurs in defense costs is based on its wealth, and an insurer should not be allowed to profit from a poor insured. It also points out that rates charged by the Attorney General's office do not include expenses or additional costs such as photocopying and traveling. Finally, the State argues that this is an equitable action in which the court can award whatever damages it deems appropriate.
"Where an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense." (Amato v. Mercury Casualty Co. (1997) 53 Cal. App.4th 825, 831, 61 Cal.Rptr.2d 909.) Contract damages are based on "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ.Code, § 3300; see Ibid.) "Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." (Civ.Code, § 3359.) Contract damages serve to put the party in as good a position as it would have been had performance been rendered as promised. (Brandon & Tibbs v. George Kevorkian Accountancy Corp. (1990) 226 Cal.App.3d 442, 455, 277 Cal.Rptr. 40.)
"Limiting an insured to contract damages for breach of the duty to defend would result in inequitable treatment of insureds based upon their financial status. If the insured were financially capable of providing its own defense with minimal collateral damage, contract damages may well be adequate compensation for the money spent on attorney fees and settlement costs. But what of the insured who must use scarce assets or is forced to turn to a lender? Recoupment of expenses incurred would not make whole the insured who was required to sacrifice in order to finance a defense. And lastly, there is the insured who is financially incapable of mounting its own defense. Assuming that insured is able ultimately to successfully sue the insurer, contract damages would not even begin to compensate for the financial and emotional losses sustained prior to obtaining such a judgment. `Only a rule that recognizes the potentially tortious nature of a bad faith refusal to defend can assure that all insureds, rich and poor alike, will have the opportunity to recover all of their losses.'" (Campbell v. Superior Court (1996) 44 Cal. App.4th 1308, 1320, 52 Cal.Rptr.2d 385, emphasis added.)
Although the State initially sued in tort for breach of the covenant of good faith and fair dealing, it did not preserve that cause of action in its first amended and supplemental complaint, which is the operative pleading. As a result, contract damages, not tort remedies, are appropriate. Contract damages are those that would make the non-breaching *80 party whole, not, as the State would have it, the costs the breaching party would have incurred. Applied to this context, Pacific Indemnity is obligated to pay those costs incurred by the Attorney General's office while defending the State in the underlying action. The rate the Attorney General's office charges state agencies pursuant to Government Code section 11044, plus other costs incurred, is the proper rate. The market rate is not.
Finally, the State points out that it sued for injunctive relief, not for a breach of contract. According to the State, the court's equitable powers allow it to award any amount it deems fair. The most obvious problem with this argument is that the trial court specifically awarded damages because Pacific Indemnity "materially breached ... [its] duty to defend...." The State did not argue that an award of damages should be based on an alternate theory, such as a breach of the implied covenant of good faith and fair dealing. It cannot transform contract damages into tort damages or "equitable" payments simply by requesting an injunction to remedy a breach of contract.

B
Following its market rate argument, the State contends that a multiplier should be added to the fees it is entitled to receive. It reasons that this case is similar to those awarding fees under the private attorney general theory. (E.g. Serrano v. Priest (1977) 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303.) We do not agree. The rationale for the "`private attorney general'" theory is the "recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" (California Licensed Foresters Assn. v. State Bd. of Forestry (1994) 30 Cal.App.4th 562, 568-569, 35 Cal.Rptr.2d 396, quoting Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 933, 154 Cal.Rptr. 503, 593 P.2d 200.) That rationale is altogether inapplicable to this case. Aside from the fact that the State sought to receive attorney's fees to defend an environmental action, rather than to effectuate a significant public policy, there can be no resort to the private attorney general theory when defense counsel is the Attorney General.
Next, the State cites several cases in which courts applied a multiplier or took various considerations into account when awarding attorney's fees. Each of these cases involves attorney's fee awards made in a context that does not apply to this case. (E.g. Vella v. Hudgins (1984) 151 Cal.App.3d 515, 198 Cal.Rptr. 725 [fees to prevailing party in a contract action under Civ.Code, § 1717]; Imperial Cattle Co. v. Imperial Irrigation Dist. (1985) 167 Cal.App.3d 263, 213 Cal. Rptr. 622 [fees in inverse condemnation action under Code Civ. Proc., § 1036], disapproved on other grounds in Bunch v. Coachella Valley Water Dist. (1997) 15 Cal.4th 432, 443-44, 63 Cal.Rptr.2d 89, 935 P.2d 796; Levy v. Toyota Motor Sales, U.S.A., Inc. (1992) 4 Cal.App.4th 807, 5 Cal.Rptr.2d 770 [fees in action by buyer under Civ.Code, § 1794, subd. (d)]; Shaffer v. Superior Court (1995) 33 Cal.App.4th 993, 39 Cal.Rptr.2d 506 [discussing Rules Prof. Conduct, rule 4-200 which governs measure of unconscionability of attorney's fees]; Downey Cares v. Downey Community Dev. Com. (1987) 196 Cal.App.3d 983, 242 Cal.Rptr. 272 [fees under Gov.Code, § 91003].) None of the cases cited by the State is based on an award of attorney's fees under Civil Code section 3300, the statute governing the fee award in this case.
The State argues a multiplier is proper because the underlying CERCLA action is a tort action. For support it cites a case decided by the Minnesota Court of Appeal holding that under the Minnesota Environmental Response and Liability Act a lodestar adjustment may be appropriate based on a variety of factors including the difficulty of the case, results obtained, contingent nature of the results and quality of the representation. (Musicland Group, Inc. v. Ceridian Corp. (1993) 508 N.W.2d 524, 535.) The proper award of attorney's fees under the Minnesota Environmental Response and Liability *81 Act is not relevant to determining the appropriate measure for contract damages under California law.
The State also directs our attention to a case decided by the Washington Court of Appeal in which attorney's fees awarded to in-house counsel pursuant to a contractual indemnity agreement were based on multiple factors. (Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc. (1992) 63 Wash. App. 802, 822 P.2d 345, 347.) To reach its conclusion, the court relied on a Washington Supreme Court case discussing appropriate fees under that state's Consumer Protection Act. (Ibid.; see Bowers v. Transamerica Title Insurance Co. (1983) 100 Wash.2d 581, 675 P.2d 193, 203-204.) Similarly, the State points out that in Aetna Casualty & Surety Co. v. Pitrolo (1986) 176 W.Va. 190, 342 S.E.2d 156, the court held that when an insured is required to retain counsel following an insurer's breach of its duty to defend the insured can recover attorney's fees as calculated based on a variety of factors. (342 S.E.2d at p. 160.) To determine the appropriate factors, the Pitrolo court looked to the Fifth Circuit's explanation in Johnson v. Georgia Highway Express, Inc. (5th Cir. 1974) 488 F.2d 714, of appropriate factors to consider in awarding attorney's fees in a civil rights case when a plaintiff alleged race discrimination. (Ibid.; see Blanchard v. Bergeron (1989) 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 [disapproving Johnson].) Neither of these cases explains why contract damages were identical to those under the Washington Consumer Protection Act or Federal Civil Rights Act.
Under California law, contract damages are those which will compensate the nonbreaching party for the harm caused by the breach. (Civ.Code, § 3300.) To the extent, if any, that holdings from the Washington and West Virginia courts conflict with the measure of contract damages in California, we decline to follow them.

C
The trial court determined that Pacific Indemnity forfeited its right to control the State's defense, a finding Pacific Indemnity does not dispute. The State notified Pacific Indemnity on July 31, 1995 that it was negotiating with the law firm of Irell & Manella to defend the counter-claims, and asked whether Pacific Indemnity would be willing to pay for defense costs. On August 4, 1995, Pacific Indemnity responded that it "agrees to the State's request regarding the retention of the Irell & Manella firm for defense of the counter-claims... and payment of their fees upon presentation as set forth in the court's ruling. However, it will do so reserving its right to withdraw from or modify its participation in that defense based upon either future rulings of the trial court or the Court of Appeal. Pacific Indemnity also reserves the right to seek reimbursement of the fees and costs paid should it be successful on appeal." The State rejected that offer because "Pacific's proposal, to pay for defense costs and then seek reimbursement from the insureds, simply won't work. The insureds cannot expose themselves to the possibility of paying, whether now or in the future, for the costs of defending this high-stakes action through outside counsel."
Subsequently, on August 28, 1995, the State entered into a contingency fee agreement with Irell & Manella by which that firm would defend the State at twice its hourly rate, but would limit its compensation to costs assessed against Pacific Indemnity. The agreement also provided that "any fees incurred by Irell & Manella shall be charged at Irell & Manella's normal hourly rates, without any surcharge, for time incurred after such time as Pacific, without reserving any right to seek reimbursement against the State or Irell & Manella, (a) has unequivocally acknowledged its duty of defense, (b) has unequivocally (except as to the propriety of specific cost charges) agreed to pay Irell & Manella at its normal rates for costs properly incurred, and (c) has unequivocally (except as [to] the propriety of specific time entries) agreed to pay Irell & Manella's fees at its normal hourly rates." (Emphasis in original.)
Pacific Indemnity argues the contingency fee agreement is unreasonable and that fees of up to $850 are excessive since it offered to provide a defense subject only to a right to reimbursement as authorized by law. Pacific *82 Indemnity maintains that when it offered to pay defense costs for the entire action by counsel chosen by the State, subject only to a reservation of rights; the need to hire counsel on a contingency fee basis terminated. In other words, Irell & Manella did not have to undertake the risk that it would be compensated for only a small proportion of its work because Pacific Indemnity offered to pay Irell & Manella's regular rate for the entire defense.
The State disagrees, arguing that four and one-half years after it tendered its defense to Pacific Indemnity, it was not required to accept Pacific Indemnity's offer contingent upon a reservation of rights. The State relies on Drinnon v. Oliver (1972) 24 Cal. App.3d 571, 580, 101 Cal.Rptr. 120, overruled on other grounds in Johnson & Johnson v. Superior Court (1985) 38 Cal.3d 243, 255, 211 Cal.Rptr. 517, 695 P.2d 1058. That case holds that an insurer which wrongfully refuses to defend loses control over the management of the claim. Pacific Indemnity does not challenge the trial court's finding that it has no right to limit or control the defense. The State also cites Insurance Co. of the West v. Haralambos Beverage Co. (1987) 195 Cal.App.3d 1308, 1320, 241 Cal. Rptr. 427 for the proposition that if an insured expressly refuses to consent to a reservation of rights, the insurer must elect whether to defend or to refuse to defend. Our Supreme Court rejected that rule in Buss when it stated that an insurer can unilaterally undertake a defense under reservation of rights. (Buss, supra, 16 Cal.4th at p. 61, fn. 27, 65 Cal.Rptr.2d 366, 939 P.2d 766.)
We shall assume for purposes of this discussion that a contingency fee agreement may be appropriate when an insurer breaches its duty to defend and persists in that attitude. But, under the circumstances of this case the arrangement is not reasonable. By breaching its duty to defend, Pacific Indemnity became liable for reasonable attorney's fees incurred for the defense. (Zurich Insurance Co. v. Killer Music, Inc. (9th Cir. 1993) 998 F.2d 674, 680 [applying California law].) "An insured obtains liability insurance in substantial part in order to be protected against the trauma and financial hardship of litigation. If the courts did not impose an immediate defense obligation upon a showing of a `potential for coverage,' thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit." (Haskel, Inc. v. Superior Court (1995) 33 Cal.App.4th 963, 979, fn. 14, 39 Cal.Rptr.2d 520.) Entering a contingency fee agreement when an insurer improperly refuses to defend may be appropriate. (See Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation (1997) 7:702.2, p. 7B-47 ["inability to pay hourly fees may not by itself excuse the insured's failure to obtain independent counsel. If the insurer's refusal to defend was wrongful, attorneys may be willing to defend the insured in the underlying action and then sue the insurer for damages on a contingency fee basis." (Emphasis in original.)].)
Here, before the State entered into its contingency fee agreement with Irell & Manella, Pacific Indemnity agreed to provide a complete defense subject only to a reservation of rights. Pacific Indemnity did not place any restrictions on attorneys the State could hire nor did it seek to control the defense. It sought only to preserve whatever right the law gave it to reimbursement. We see no reason why it should be required to forfeit whatever right to reimbursement it eventually may be adjudicated to have. (See Buss, supra, 16 Cal.4th at p. 61, fn. 27, 65 Cal.Rptr.2d 366, 939 P.2d 766 [insurer can reserve right of reimbursement for defense costs unilaterally because the right is the insurer's alone].) Because Pacific Indemnity offered to provide the entire defense before the State and Irell & Manella entered into the contingency fee agreement, it is not reasonable to force Pacific Indemnity to incur costs of twice the amount it agreed to pay. Instead, Pacific Indemnity should compensate Irell & Manella at its regular hourly rate.
Finally, we reiterate the contractual nature of the relationship between the insurer and insured. The State is entitled to what it bargained fora defense of the entire action *83 that contains potentially covered claims. Pacific Indemnity is obligated to defend the entire action, not just a fraction that is proportionate to its one-year of coverage. Because Pacific Indemnity repudiated that obligation, the State is entitled to damages that will make it whole, but no more. That means the State is entitled to recover the costs of the defense, which in this case is the costs incurred by the Attorney General's office at its regular rate plus incidentals, and the fees it paid to the law firm of Irell & Manella as reflected in its normal hourly rate.

DISPOSITION
The trial court's finding that Pacific Indemnity is obligated to provide an entire defense is affirmed. The trial court's calculation of costs for work done by the Attorney General's office is reversed. The matter is remanded for the trial court to calculate fees based on the rate the Attorney General's office charges other state agencies, plus any incidentals, and interest. The trial court's determination that the contingency fee agreement entered into between the State and Irell & Manella is reasonable is reversed. Pacific Indemnity is ordered to compensate Irell & Manella at its regular hourly rate. Each party is to bear its own costs on appeal.
CHARLES S. VOGEL, P.J., and CZULEGER, J.[*], concur.
NOTES
[1] Although the complaint was filed against both Pacific Indemnity and Chubb Group of Insurance, Pacific Indemnity is the sole appellant.
[2] This is consistent with other standard comprehensive liability policies issued prior to 1966. (See Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 56, fn. 9, 70 Cal. Rptr.2d 118, 948 P.2d 909.)
[3] Civil Code section 2860, subdivision (a) provides: "If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section."
[4] Government Code section 11044, subdivision (a) provides: "For state agencies, departments, or programs which are charged for the costs of legal services rendered by the Attorney General, the Attorney General shall charge an amount sufficient to recover the costs incurred in providing the legal services."
[*] Assigned by the Chairperson of the Judicial Council.