**BROWNE GEORGE ROSS LLP**

v.

**LEXINGTON INSURANCE CO.**

Case No. 2:12–cv–02148–SVW–PLA

United States District Court, C.D. California.

Signed July 24, 2012

Allan Browne, Peter W. Ross, Sylvia P. Lardiere, Browne Woods George LLP, Los Angeles, CA, for Browne George Ross LLP.

Carey Bryan Moorehead, Darren Le Montree, Patrick Michael Kelly, Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, Los Angeles, CA, for Lexington Insurance Co.

**Proceedings:** IN CHAMBERS ORDER re Motions for Summary Judgment [21, 28]; Plaintiff's Application to File Response to Reply Brief [38]

STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION AND FACTUAL BACKGROUND

On March 14, 2012, Plaintiff Browne George Ross, LLP filed this action against its former insurer Lexington Insurance Company ("Defendant"), alleging claims for (1) Breach of Contract; and (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, based on Defendant's purported breach of its duty to defend Plaintiff in a malpractice action brought by several of Plaintiff's former clients. (Dkt.1).

On or about February 22, 2008, Defendant issued Plaintiff a Lawyers Professional Liability Insurance policy, Policy No. 3236926, which provided coverage for negligent acts, errors, and omissions occurring before February 22, 2008, with a five-year extended reporting period. (See Dkt. 10–3, Exh. 4 ("Lexington Policy")). Endorsement # 1 of the Policy provides:

This endorsement amends the Other·insurance condition so that the insurance provided is excess over any other valid and collectible insurance available to the insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after this endorsement takes place.

(Lexington Policy, Endorsement # 001).

Plaintiff ·subsequently obtained a Lawyers Professional Liability Insurance policy from Catlin. (George Decl., Exh. 2. ("Catlin Policy")). The Catlin Policy covered certain acts, errors, and omissions occurring after January 1, 2009. (*See id.*). The Catlin Policy also contained an "Other Insurance" clause, which provided:

This insurance ·shall apply in excess of any other valid and collectible insurance available to any Insured, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this policy.

(Catlin Policy, § X).

In April 2010, Plaintiff was threatened with a malpractice lawsuit (the "Underlying Action") by several former clients (the "Claimants"). In a letter dated April 26, 2010, Plaintiff notified Catlin that Claimants "intend to file an action against our firm for legal malpractice." (George.Decl., Exh. 4). On April 30, 2010, Plaintiff's insurance broker forwarded this "claim notice" to Defendant. (*Id.*).

In consultation with Catlin, Plaintiff hired a third-party law firm, ·Munger, Tolles & ·Olson LLP ("MTO"), to defend Plaintiff in the Underlying Action. (SUF 8). MTO ultimately secured a complete defense verdict·for Plaintiff. (SUF 37). According to Plaintiff, MTO billed Plaintiff $1,877,390.18. (SUF 37). ·Catlin paid $870,415.95 of MTO's fees and ·costs, and an additional $101,093.12·in costs to third parties, for ·a total of $971,509.07. (SUF 38). Plaintiff· avers that. it paid the remaining $1,006,974.23 owed to MTO, and an additional $74,208.88 in other costs, for a total of $1,081.183.11. (SUF 39). Defendant did not provide Plaintiff· with a defense in the Underlying Action, nor did Defendant reimburse Plaintiff for any portion of this amount. (*See* SUF 40).

Plaintiff filed this action on March 14, 2012.·(Dkt. 1). On May 29, 2012, the Court denied Defendant's Motion to Dismiss, holding that because Defendant failed to provide Plaintiff a defense in the Underlying Action, the fees recoverable by Plaintiff are not limited by California Civil Code § 2860. (*See* Dkt. 19).

The parties subsequently filed the cross-motions for summary·judgment currently pending before the Court. (Dkt. 21, 28). For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment, (Dkt. 21), is GRANTED IN PART. Defendant's Motion for Summary Judgment, (Dkt. 28), is DENIED. Plaintiff's Application to File Response to Reply Brief, (Dkt. 38), is DENIED AS MOOT.

## II.  LEGAL STANDARD·

Rule 56(c) requires summary judgment for the moving· party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is ·no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997).

The .moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its Rule 56(c) burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the .nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 . S.Ct. ·2548. Once the moving

party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes over facts that might affect the outcome of the suit under the governing law—*i.e.,* "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party"—will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Under Local Rules 56–2 and 56–3, these triable issues of fact must be identified in the nonmoving party's "Statement of Genuine Issues" and supported by "declaration or other written evidence." *See also Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 779 (9th Cir.2010) ("Federal Rule of Civil Procedure 56(e)(2) requires a party to 'set out *specific* facts showing a genuine issue for trial.'") (emphasis in original). If the non-moving party fails to identify the triable issues of fact, the court may treat the moving party's evidence as uncontroverted, so long as the facts are "adequately supported" by the moving party. Local Rule 56–3; *see also International Longshoremen's Ass'n, AFL–CIO v. Davis,* 476 U.S. 380, 398 n. 14, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) ("[I]t is not [the Court's] task *sua sponte* to search the record for evidence to support the [parties'] claim[s]."); *Carmen v. San Francisco United School District,* 237 F.3d 1026, 1029 (9th Cir.2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").

## III. DISCUSSION

### A. Duty to Defend

▮ Under California law, an insurer's duty to defend is significantly broader than its duty to indemnify. An insurer "must defend a suit which **potentially** seeks damages within the coverage of the policy[.]" *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis in original). "[T]he insurer need not defend if the third party complaint **can by no conceivable theory raise a single issue which could bring it within the policy coverage.**" *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (quoting *Gray,* 65 Cal.2d at 276, n. 15, 54 Cal.Rptr. 104, 419 P.2d 168) (emphasis in *Montrose*). In other words, the duty to defend is triggered by "a bare 'potential' or 'possibility' of coverage[.]" *Id.* Moreover, "[i]n a 'mixed' action, in which some of the claims are at least potentially covered or in which parts of a claim are potentially covered, and others are not, the insurer has a duty to defend the entire action." *State v. Pac. Indem. Co.,* 63 Cal.App.4th 1535, 1546, 75 Cal.Rptr.2d 69 (Cal.App.1998).

▮ Here, Claimants' arbitration claim against Plaintiff alleged legal malpractice based on alleged acts, errors, and omissions occurring between September 2006 and June 2009. (*See* SUF 6). The Lexington Policy provided coverage for any such acts that occurred prior to February 22, 2008. (*See* Lexington Policy). Accordingly, Defendant's duty to defend Plaintiff was triggered. *See State v. Pac. Indem. Co.,* 63 Cal.App.4th at 1546, 75 Cal.Rptr.2d 69.

■ Catlin also owed Plaintiff a duty to defend in the Underlying Action, based on claimants' allegations regarding conduct occurring after January 1, 2009, the effective date of the Catlin Policy. That Catlin also had a duty to defend, however, did not excuse Defendant's failure to provide a defense. *See Aerojet–General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 70, 70 Cal.Rptr.2d 118, 948 P.2d 909 (1997) (holding each insurer has a duty to defend *"separate and independent from the others "*) (emphasis in original).

> [A]ll obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual commitments.

*Continental Casualty Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 37, 17 Cal.Rptr. 12, 366 P.2d 455 (1961). "[N]o insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation." *Id.* at 38, 17 Cal.Rptr. 12, 366 P.2d 455.

### B. "Other Insurance" Provision

■ Defendant claims that it was excused from providing Plaintiff a defense based on the amended "Other Insurance" provision in the Lexington Policy, which states:

> This endorsement amends the Other insurance condition so that the insurance provided is excess over any other valid and collectible insurance available to the insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after this endorsement takes place.

Pursuant to this provision, Defendant contends that it was only an "excess" insurer, and Catlin was the "primary" insurer. Because Catlin (as the primary insurer) provided Plaintiff with a defense, Defendant contends that it (as the excess insurer) was not required to do so.

Defendant's argument fails for two reasons. First, the Lexington Policy was the *only* policy that provided Plaintiff coverage for alleged acts, errors, and omissions prior to February 22, 2008. With respect to claims based on conduct during this time period, there was no other "valid and collectible insurance available to the insured." If, for example, Claimants had prevailed on their malpractice claim against Plaintiff only as to acts occurring before February 22, 2008, Defendant would have had a duty to indemnify Plaintiff, while Catlin would have had no such duty. In other words, depending upon the resolution of the relevant *facts,* the Underlying Action *"potentially* [sought] damages within the coverage of the policy[.]" *See Gray*, 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168 (emphasis in original); *see also Mirpad, LLC v. California Ins. Guarantee Assn.,* 132 Cal.App.4th 1058, 1068, 34 Cal.Rptr.3d 136 (Cal.App.2005) ("If coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend.") (emphasis in original). Defendant has cited no case finding an insurance company did not have a duty to defend in circumstances analogous to those presented in this case. *Cf. Hartford Casualty Ins. Co. v. Travelers Indemnity Co.,* 110 Cal.App.4th 710, 2 Cal.Rptr.3d 18 (Cal. App.2003) (enforcing "excess only" provision where, *inter alia,* both of the insur-

ance policies at issue were in effect at the time of the death upon which the insurance claim was based).

Second, to the extent that the "Other Insurance" provision of the Lexington Policy arguably could be construed as applicable to this dispute, the Catlin Policy had a similar, conflicting "Other Insurance" provision.

> This insurance shall apply in excess of any other valid and collectible insurance available to any Insured, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this policy.

(Catlin Policy, § X). Under California law:

> ■ ■ "Escape" clauses came to be so named because they permit an insurer to make a seemingly ironclad guarantee of coverage, only to withdraw that coverage (and thus escape liability) in the presence of other insurance. When 'excess only' clauses are found in primary liability policies, they are treated the same way as escape clauses. Because these types of provisions are disfavored, courts have developed a method of overriding them—When two or more applicable policies contain such clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded. The reason for this rule is that the conflicting provisions are deemed essentially irreconcilable; if given effect competing clauses would strand an insured between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston.

*Century Surety Co. v. United Pacific Ins. Co.*, 109 Cal.App.4th 1246, 1256, 135 Cal. Rptr.2d 879 (Cal.App.2003) (citing *Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal.App.4th 739, 744, 89 Cal. Rptr.2d 415 (Cal.App.1999)) (internal citations and quotation marks omitted). *See also Hartford Casualty Ins. Co. v. Travel-*

*ers Indemnity Co.*, 110 Cal.App.4th 710, 726, 2 Cal.Rptr.3d 18 (Cal.App.2003) ("[T]he recent trend is to prorate the loss between the carriers.") (internal quotation marks and citation omitted).

California courts have enforced "excess only" clauses where the clauses (1) are narrowly defined, and (2) can be reconciled with one another. *See Hartford Casualty Ins. Co.*, 110 Cal.App.4th at 726, 2 Cal. Rptr.3d 18 (enforcing "excess only" clause that applied only where the insured was "added as an additional insured under any other policy," concluding: "The policies in this case contain narrow exceptions to their operation as primary insurance. There are no broad 'excess only' clauses in either policy that purport to make the coverage excess whenever there is other insurance."). Here, in contrast, the Lexington Policy's "excess only" provision is defined broadly, purporting to make the Policy's coverage "excess over *any other valid and collectible insurance* available to the insured whether primary, excess, contingent or on any other basis, *whose policy period begins or continues after this endorsement takes place*." (emphases added).

Moreover, the "other insurance" provisions in the Catlin and Lexington policies are irreconcilable. The Catlin Policy provides:

> This insurance shall apply in excess of any other valid and collectible insurance available to any Insured, unless such other insurance is written only as specific excess insurance over the Limit of Liability *of this policy*.

(Catlin Policy, § X (emphasis added)). Because the Lexington Policy is not "written only as specific excess insurance over the Limit of Liability of this policy [i.e., the Catlin Policy,]" the Catlin Policy would, pursuant to the terms of its "other insurance" provision, apply in excess of the

Lexington Policy. Similarly, the Lexington Policy broadly provides:

> [T]he insurance provided is excess over any other valid and collectible insurance available to the insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after this endorsement takes place.

(Lexington Policy, Endorsement # 001). Thus, the Lexington Policy would, pursuant to the terms of its "other insurance" provision, apply in excess of the Catlin Policy. Because the "other insurance" provisions of the Lexington and Catlin policies are in direct conflict, enforcing these provisions "would strand [Plaintiff] between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston." *See Century Surety Co.,* 109 Cal. App.4th at 1256, 135 Cal.Rptr.2d 879.

Accordingly, to the extent that the "Other Insurance" provisions in the Lexington Policy and the Catlin Policy arguably could be construed as applicable to this dispute, the Court could not enforce these provisions as written under California law. Instead, the cost of defending Plaintiff would be prorated between Defendant and Catlin.

### C. Breach of Duty to Defend

█ "[A]n insurer's failure to pay the full amount of reasonable and necessary defense costs based on the contention that there may be other coverage available is a breach of the duty to defend." *Pepsi–Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.,* 2010 WL 10875087, *7, 2010 U.S. Dist. LEXIS 144401, *25 (C.D.Cal. Dec. 28, 2010) (citing Croskey, Heeseman & Popik, Cal. Prac. Guide: Insurance Litigation (The Rutter Group 2008), at ¶ 7:631 (citing *Haskel, Inc. v. Sup.Ct. (Aetna Cas. & Sur. Co.)* (1995) 33 Cal.App.4th 963, 976, 39 Cal.Rptr.2d 520, 526, fn. 9)).

█ Accordingly, by failing to defend Plaintiff and/or to reimburse Plaintiff for any of the costs incurred in defending the Underlying Action, Defendant breached its duty to defend.

### D. Damages

█ Fact issues preclude summary judgment regarding the extent to which Plaintiff suffered damages as a result of Defendant's breach of its duty to defend. *See generally State v. Pac. Indem. Co.,* 63 Cal.App.4th 1535, 1548–49, 75 Cal.Rptr.2d 69 (Cal.App.1998) (Where "the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the ... expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary.").

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment, (Dkt. 21), is GRANTED IN PART as follows: Defendant owed Plaintiff a duty to defend; Defendant breached that duty; and (as held in the Court's prior Order denying Defendant's Motion to Dismiss) Plaintiff's damages are not limited by California Civil Code § 2860.

Defendant's Motion for Summary Judgment, (Dkt. 28), is DENIED. Plaintiff's Application to File Response to Reply Brief, (Dkt. 38), is DENIED AS MOOT.